Smith, J.
The policy issued by the plaintiff in error, August 3, 1869, insuring the life of John G. Attee in the sum of $5,000, contained this among other provisions. “ Or if he (the insured) shall become so far intemperate as to impair his health, or induce delirium tremens ” * * *, “ then in each and every of the foregoing cases, this policy shall become, and be null and void.”
On the death-of Attee, an action was brought by the administratrix of his estate, to collect the amount of the policy. An answer was filed by the company alleging a breach of the foregoing condition by the insured, after the issuing thereof, in this, that he became so far intemperate as to impair his health, and to induce delirium tremens, and that by reason thereof the policy became void. This was denied by the reply of the plaintiff below, but there is no question but that on the trial *651 of the case, evidence was introduced by the company which tended to sustain this allegation, and which made the special instructions hereinafter set out as Nos. 6 and 7, which the defendant company asked the court to give to the jury, relevant and proper to be given, if they stated the law correctly on the point involved. The court declined to give these instructions in the form in which they stood, but did give them with certain modifications — to which action of the court the defendant duly excepted — and the only questions presented for our consideration, are first, whether these charges, and the one numbered ten (which was refused entirely), were correct and should have been given; and second, were the modifications, as made by the court, right and proper.
Charge No. 6, as requested, was as follows: “If you find from the testimony that John G. Attee, at any time between the date of the policy of insurance and the date of his death, became so far intemperate as to impair his health, then I say to you that the policy became null and void, and there can be no recovery upon it in this case,’ and your verdict will be for the defendant.”
In our judgment this was good law, and should have been given to the jury. It is nothing more than a statement of the terms of the policy. But while this is so, it was certainly within the province of the trial judge to explain to the jury the meaning of any of the words or phrases so used in the policy, or in the charge requested, and if this was correctly done by the addition made to the charge as it was given to the jury, the company has no valid ground of complaint.
The modification complained of, was this: “ What is meant by the phrase to ‘ become so far intemperate as to impair his health,’ is, that he should have so far acquired the habit of using intoxicating liquors, that thereby his health was impaired. And that habit does not necessarily mean a daily or continuous use of intoxicating liquors to excess, but it might be a habit.of periodically indulging in excess in intoxicating liquors; but it does not include the habit of using liquors in moderation, nor does it include any single occasional debauch.”
Charge No. 7, as asked, and the modification made thereof, *652 are very similar to the foregoing. The charge itself was the same, except that it used the language, “ became so far intemperate as to induce delirium tremens,” and the modification was as follows:
“ The phrase ‘ to become so far intemperate,’ is the same I have already given you. He must have acquired the habit of using intoxicating liquors to excess. It does not include the habit of using intoxicating liquors in moderation, nor does it include an occasional debauch. If the habit as defined to you, induces delirium tremens, that is the meaning of that sentence — but if the delirium tremens is induced by a single debauch, not forming a part of his habit, or being of his habit, that is not the delirium tremens which would avoid the policy.”
The meaning of these charges, as given by the court to the jury, as we understand them, is this: That if the insured, after the date of the policy, by the excessive use of intoxicating liquors empaired his health, no matter how seriously, or induced delirium tremens, yet if he had not acquired the habit of using intoxicating liquors to excess — or if the impaired health, or the attack of delirium tremens was the result of a “ single occasional debauch,” and not of the habit, this was not a breach of the condition in the policy.
Was this construction put by the court on the contract, correct ?
In determining this, we think it clear on the authorities, that if the language used in the policy is open to two interpretations, that it is right and proper that a tribunal, called upon to say what it means, should adopt that most favorable to the insured. The policy uses language carefully prepared by the Company, to protect itself against loss — it contains a multitude of provisions, all looking to this end. They are not usually carefully read by those seeking insurance; and if objected to, it would probably be unavailing. But whatever may be the reason of the rule, it exists, and is right. But it must also be remembered, that it is evident that the Company, by the provisions of its policy, was attempting to guard itself against loss, which would follow from the death of the insured from diseases caused by the excessive use of ardent *653 spirits; and .it was of no consequence to it, whether it was brought'about as the result of a habit, or of a single excess— whether the impaired health or the attack of delirium tremens was produced in one way or the other.
Looking at the question then, in the light of these principles, what meaning should be given to this provision of the policy, that it should becom'e void if the insured “ shall become so far intemperate as to impair his health,” etc.?
It is true that one of the meanings of the word “ intemperate ” as applied to a person is, that such person is “ addicted to the excessive, or habitual use of intoxicating liquors.”. This is the third definition of the word given in Webster’s Dictionary. Both of the words, “addicted” and “habitual” imply that such use is something more than the moderate and occasional use of such stimulants. But the definition quoted, is not the only, or perhaps the primary one of the word “ intemperate,” — the first and second as given by the same authority are these — “ 1st. Not moderate or restrained within due limits; indulging to excess any appetite or passion, either habitually, or in a particular instance — immoderate in enjoyment or exertion: passionate, as intemperate in passion. 2nd. Exceeding the usual and just measure; excessive ; ungovernable; inordinate.”
And certainly the voluntary and excessive use of liquor by a person, and to such an extent as to impair his health, or induce delirium tremens, (which latter disease all know is only caused by the excessive and immoderate use of stimulants), would clearly show that such person was intemperate within the fair and ordinary interpretation given to that word.
But we are also of the opinion that the other words of the sentence under consideration, as used in the policy, throw some light on the meaning to be given to this word. The policy does not say that if the insured shall become intemperate, and thus impair his health, etc., that it would render the policy null and void — -if it did, there might be more foundation for the claim of counsel for the defendant in error. The language is, that if he shall become so far intemperate as to accomplish or bring about the result indicated, that the policy will become void; and it seems to us, that it may fairly be *654 said that the meaning of the sentence or provision, is not, that to make the policy void, the intemperance should have grown to be the habit of the insured, but that the same result would follow, if by single acts of excess, or by a series of acts, not showing a habit, the health of the insured was impaired, or delirium tremens induced. It is not the habit which was intended to be guarded against, but the impaired health which would result from any excess in that direction.
Such it seems to us, is the reasonable construction to be placed on this provision. If however we entertained doubt as to this, we would feel disposed to adopt it as the correct one, in view of the decision of the Supreme Court of the United States, in the case of the Aetna Ins. Co. v. Davey, 123 U. S. 739, which is directly in point, and which was reported after the trial of this case in the common pleas, and which was then unknown to both, court and counsel.
The language of the policy of insurance under consideration in that case, was, so far as this question is concerned, precisely the same as in this. And in the decision of the case by the Supreme Court, the judge delivering the opinion uses this language.
“The defendant then asked the (trial) court to say to the jury, that the words in the policy, “ become so far intemperate as to impair health,” do not necessarily imply habitual intemperance, and that an act of intemperance, producing impairment of health, was within the conditions of the policy, and rendered it null and void.” * * * “ The court declined to so instruct the jury, and said: “The words of the condition are to be expounded according to the common and popular acceptation of their meaning. In this sense of them, a single excessive indulgence in alcoholic liquors is not intemperance, but there must be such frequency in their use, continued for a longer or shorter period, as indicates an injurious addiction to such indulgence.”
This ruling' of the trial court was held to be erroneous, and the second syllabus of the caséis, “ that if the death was substantially caused by the excessive use of alcoholic stimulants, not taken for medical purposes, or under medical advice; the assured’s health was impaired within the meaning of the policy, *655 although he might not have had delirium tremens, and although he had not indulged in strong drink for such a long period of time, or so frequently as to become habitually intemperate.”
J. M. Jordan, attorney for plaintiff in error.
Lincoln, Stephens & Lincoln, attorneys for defendants in error.
It seems to us that this is an adjudication of the precise question under consideration in this case, and is directly opposed to the ruling of the court of common pleas. But the counsel for the defendant in error, has argued to us with much force and earnestness, that if this be so, that is not good law, and that we, as a court, are not bound to follow it. It is true that we are not in all cases obliged to be governed by the rulings of the courts of other states, or of the United States, in the same sense that we are by the decisions of our own courts. But on a question of general law, involving, as this does, the construction of the language of a contract which must have the same meaning everywhere, and when as here, we see a decision announced as the unanimous judgment of a tribunal of the very highest character for ability and learning, and when we find no decision of our Supreme Court; nor indeed of any one, directly opposed to it, we would feel that the safe and proper thing for us to do would be to follow it, even if it were opposed to our own views, which is not the case.
Charge No. 10 asked to. be given was refused. It was as follows: “It is not necessary, gentlemen, for the defendant in this case to show that the death of Attee was caused by the excessive use of alcoholic drinks, or that he died from delirium tremens. His death may have been caused by typho-malarial fever, or may have occurred from natural causes; yet nevertheless the defendant will be entitled to your verdict, if Attee became so far intemperate as to impair his health or induce delirium tremens.”
We think this charge was entirely correct, and should have been given to the jury.
The result of what we have said is, that the judgment should be reversed, with costs, and the case remanded for a new trial..
Judge Cox dissents from this judgment.