# ÆTNA LIFE INSURANCE COMPANY *v.* DAVEY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

Argued November 23, 1887. — Decided December 19, 1887.

A policy of life insurance contained questions to the applicant with his answers, and provisions that the answers were warranted to be true, and that the policy should be void if they were in any respect false or fraudulent. Among these questions and answers were the following: "5. Q. Are the habits of the party sober and temperate? A. Yes. 6. Q. Has the party ever been addicted to the excessive or intemperate use of any alcoholic stimulants or opium, or does he use any of them often or daily? A. No." It also contained a provision that if the applicant should become so far intemperate as to impair health or induce *delirium tremens*, it should become void. After the death of the assured the insurer defended against an action on the policy by setting up (1) that the answers to these questions were false; and (2) that the deceased, after the issue of the policy, became intemperate, impaired his health thereby, and induced *delirium tremens*. *Held:*

(1) That an instruction to the jury as to question 6 that they could not find the answer to be untrue unless the assured had, prior to the issue of the policy, been addicted to the excessive or intemperate use of alcoholic stimulants or opium, or, at the time of the application, habitually used some of them often or daily, was a correct

construction of the language of question 6, as interpreted in con-
nection with question 5.

(2) That if the death was substantially caused by the excessive use of
alcoholic stimulants, not taken for medical purposes or under
medical advice, the assured's health was impaired by intemperance
within the meaning of the policy, although he might not have had
*delirium tremens*, and although he had not indulged in strong drink
for such a long period of time or so frequently as to become habit-
ually intemperate; and that it was for the jury to determine
whether the death was so caused.

THIS was an action in the nature of assumpsit upon a policy
of insurance. Judgment for plaintiff. Defendant sued out
this writ of error. The case is stated in the opinion of the
court.

*Mr. Theron G. Strong* for plaintiff in error.

*Mr. John Linn* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

By its policy, issued July 16, 1878, the Ætna Life Insurance
Company insured the life of William A. Davey in the sum of
ten thousand dollars, payable to his wife, the present defend-
ant in error, within ninety days "after due notice and proof
of the death" of the insured, during the continuance of the
policy. Among the questions in the application for the policy
were the following: "5. Are the habits of the party sober
and temperate? 6. Has the party ever been addicted to the
excessive or intemperate use of any alcoholic stimulants or
opium, or does he use any of them often or daily?" To the
first question the answer was "Yes;" to the second, "No."
The application, which by agreement was made the basis of
the contract, contained a warranty of the truth of the answers
to the above and other questions, and that the policy should
be void if they were in any respect false or fraudulent.

The policy was issued and accepted upon the following
among other conditions: 1. That the answers, statements,
representations, and declarations contained in or endorsed
upon the application, made part of the contract, are war-

ranted to be true in all respects, and that the policy should be absolutely null and void if obtained by or through any fraud, misrepresentation, concealment, or false statement; 2. That if the insured "shall become so far intemperate as to impair his health or induce *delirium tremens,* or if his death shall result from injuries received while under the influence of alcoholic liquor," the policy should be null and void, except as provided in the eighth section of the conditions. The latter section is in these words: "In every case when the policy shall cease, be or become void (except by fraud, misrepresentation, concealment, or any false statement), if the premiums for three entire years shall have been paid, the amount which by the seventh section of these conditions would be applied to the purchase of a paid-up policy, shall not be forfeited to the said company, but the same shall be due and payable in ninety days after due notice and proof of death of the said insured."

The insured died August 6, 1881, while on a visit at Alexandria Bay. The company having received due notice and proof of his death, and having refused to pay the amount named in the policy, this action was brought by his widow. The company, besides pleading the general issue, made these special defences: That, contrary to the statements made in his application, the insured, for a long time prior to the issuing of the policy, was addicted to the excessive and intemperate use of alcoholic stimulants, and had used them often and daily; and that, in violation of one of the conditions of the contract, he became, *after the issuing of the policy,* so far intemperate as greatly to impair his health and to induce *delirium tremens.*

At the trial, evidence was introduced tending to establish both of these special defences. But there was also evidence tending to show that the insured was not, prior to the issuing of the policy, addicted to the excessive or intemperate use of alcoholic stimulants, and that he did not, after that date, become so far intemperate as to impair his health or induce *delirium tremens.*

There was a verdict and judgment for the plaintiff for the sum named in the policy, with damages to the amount of $1419.82.

Upon the issue as to the truth or falsity of the answer to the sixth question in the application for the policy, the court instructed the jury, in substance, that they could not find the answer to be untrue, unless the insured had, prior to the issu-. ing of the policy, been *addicted* to the excessive or intemperate use of alcoholic stimulants or opium, or at the time of the application *habitually* used some of them often or daily.   The charge, upon this point, followed almost the identical words of the question propounded to the insured, and is unobjectionable, unless, as is contended, the court erred in using the word "habitually;" implying thereby that the answer of "No" was a fair and true one, if the use by the insured of stimulants, at the time the policy was issued, was not so frequent or to such an extent as to indicate, in that respect, a fixed, settled course or habit of life.   We are of opinion that the question put to the insured was properly interpreted by the court. The inquiry as to whether the insured had ever been addicted to the excessive or intemperate use of alcoholic stimulants, and, whether, at the time of the application, he used alcoholic stimulants "often or daily" was, in effect, an inquiry as to his habit in that regard; not whether he used such stimulants or opium at all, but whether he used any of them habitually. If he was addicted to the excessive use of them, he was habitually intemperate; and to use them often or daily is, according to the ordinary acceptation of those words, to use them habitually.   That this is the correct interpretation of the words is partly shown by the fifth question, "Are the habits of the party sober and temperate?"

But we are of opinion that the court below erred in its interpretation of the words in the policy which refer to the use of strong drinks by the insured after he obtained it.   Having secured his agreement and warranty that he was not at that time, nor ever had been, habitually intemperate, the company sought to protect itself against an improper use by him, in the future, of alcoholic stimulants, by the provision that the policy should become null and void "if he shall become so far intemperate as to impair health or induce *delirium tremens.*" The court instructed the jury: "The impairment of health

contemplated by this condition of the policy is not necessarily permanent or irremediable, nor is it the temporary indisposition or disturbance usually resulting from a drunken debauch, but it is the development of disease or the impairment of constitutional vigor by the use of intoxicating beverages in such a degree and for such a time as is ordinarily understood to constitute intemperance."

The defendant then asked the court to say to the jury that the words in the policy, " become so far intemperate as to impair health," do not necessarily imply habitual intemperance, and that an act of intemperance, producing impairment of health, was within the conditions of the policy, and rendered it null and void, except as provided where the premiums for three entire years had been paid, and the policy had ceased upon other grounds than fraud, misrepresentation, concealment, or false statement of the insured. The court declined to so instruct the jury, and said : "The words of the condition are to be expounded according to the common and popular acceptation of their meaning. In this sense of them a single excessive indulgence in alcoholic liquors is not intemperance, but there must be such frequency in their use, continued for a longer or shorter period, as indicates an injurious addiction to such indulgence." The effect of these and other instructions was that the condition that the policy should be void if the insured became so far intemperate as to impair his health, was not broken unless intemperance became the habit or rule of his life after the policy was issued. The jury may have believed — and there was some, we do not say conclusive, evidence, to justify them in so believing — that the efficient, controlling cause of the death of the insured was an excessive and continuous use of strong drinks for several days and nights immediately preceding his death ; yet they were not at liberty, under the instructions, to find that he became so far intemperate as to impair his health, unless it further appeared that his intemperance in the use of alcoholic stimulants covered such a period of time, as to constitute the habit of his life. This construction of the contract is, in our judgment, erroneous. If the substantial cause of the death of the insured was

an excessive use of alcoholic stimulants, not taken in good faith for medical purposes or under medical advice, his health was impaired by intemperance, within the meaning of the words "so far intemperate as to impair his health," although he may not have had *delirium tremens*, and although, previously to his last illness, he had not indulged in strong drink for such a long period of time or so frequently as to become habitually .intemperate. Whether death was so caused is a matter to be. determined by the jury under all the evidence.

. It is supposed by the plaintiff that the instructions of the court are sustained by *Northwestern Ins. Co.* v. *Muskegon Bank*, 122 U. S. 502. In that case the insured answered "Yes, occasionally," to the question whether he then was or had ever been "in the habit of using alcoholic beverages or other stimulants;" and stipulated, in the application, that he was not then, and would not become, "habitually intemperate." The policy contained a provision, not fully set out in the report of the case, that it should be null and void if the insured "shall become either habitually intemperate *or* so far intemperate as to impair health or induce *delirium tremens.*" No question was made or could have been made in this court in respect to the meaning of the words "so far intemperate as to impair health," because the jury were instructed, at the request of the company, that if the insured, Comstock, became so far intemperate as to impair his health, they must find for the defendant. The contest in this court was as to what constituted habitual intemperance, and as to the rulings in the court below upon that point. Indeed, it was assumed at the trial of that case, as well as in this court, that there was, or might be, a difference between habitual intemperance and intemperance that impaired health. There was, consequently, no occasion for this court, in that case, to decide what construction was to be put upon the words "so far intemperate as to impair health," when standing alone in a policy. The jury having found, under proper instructions, that the insured had not become so far intemperate as to impair his health, that finding was not open to review here. It is clear, therefore, that there is nothing in *Northwestern Ins. Co.* v. *Muskegon Bank* that concludes the present case, or that militates against our interpretation of the policy here in suit.

Other questions have been discussed by counsel; but, as they may not arise upon another trial, or in the precise form in which they are now presented, we will not consider them. For the reasons stated,

*The judgment must be reversed, with directions for another trial in accordance with the principles of this opinion. It is so ordered.*