**COLORADO STATE BOARD OF MEDICAL EXAMINERS, Complainant–Appellee,**

v.

**Mary M.M. HOFFNER, Respondent– Appellant.**

**No. 90CA1938.**

Colorado Court of Appeals, Div. V.

March 26, 1992.

Rehearing Denied May 7, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., James F. Carr, Asst. Atty. Gen., Denver, for complainant-appellee.

Haddon, Morgan & Foreman, P.C., Lee D. Foreman, Rachel A. Bellis, Denver, for respondent-appellant.

Opinion by Judge DAVIDSON.

Respondent, Mary M.M. Hoffner, appeals from the order of the Colorado State Board of Medical Examiners revoking her license to practice medicine. We affirm.

Respondent became licensed to practice medicine in Colorado in June 1963. In 1984, she was convicted of several counts of unlawful distribution of controlled substances and illegal prescriptions. She was sentenced to one year in prison and five years probation and her medical license was suspended.

In 1986, the Board reinstated her license pursuant to an agreement with respondent that, among other things, her practice would be monitored by a licensed physician for a period of five years. In 1987, respondent was convicted of driving under the influence of alcohol. As part of her sentence, she attended alcohol treatment classes, received out-patient therapy, and took monitored antabuse.

In 1990, based upon a report from her practice monitor that respondent had temporarily closed her practice in order to attend an in-patient substance abuse program in Virginia, the inquiry panel of the Board summarily suspended respondent's license and authorized the Attorney General to file a complaint with the Board alleging that she had committed unprofessional conduct in violation of §§ 12–36–117(1)(i) and (o), C.R.S. (1991 Repl.Vol. 5B).

Respondent denied the allegations and the matter was referred to an Administrative Law Judge (ALJ) for hearing and an initial decision in accordance with § 12–36–118, C.R.S. (1991 Repl.Vol. 5B) and § 24–4–105, C.R.S. (1988 Repl.Vol. 10A). Follow-

ing an evidentiary hearing, the ALJ found that respondent's conduct constituted unprofessional conduct as proscribed by § 12–36–117(1)(i) regarding "habitual intemperance." The ALJ determined that the charge of unprofessional conduct under § 12–36–117(1)(*o*) (inability to practice medicine with skill and safety) had not been proven and recommended that respondent be placed on probation for three years. On review, the Board affirmed the ALJ's findings but rejected the ALJ's recommendation as to the appropriate sanction and revoked her license. This appeal followed.

## I.

### A.

■ Respondent asserts that the term "habitual intemperance," as set forth in § 12–36–117(1)(i) is unconstitutionally vague. Specifically, although she agrees that the term refers to alcohol consumption, she argues that the statute is vague as to what manner of consumption is prohibited. We disagree with her contention.

■ A statute is not void for vagueness if it fairly describes the conduct forbidden, and persons of common intelligence can readily understand its meaning and application. *Eckley v. Colorado Real Estate Commission,* 752 P.2d 68 (Colo.1988).

Statutory terms need not be defined with mathematical precision. Rather, "the statutory language must be sufficiently specific to give fair warning of the prohibited conduct, but must also be sufficiently general to address the problem under varied circumstances and during changing times." *Davis v. State Board of Psychologist Examiners,* 791 P.2d 1198 (Colo.App.1989). Also, words and phrases used in statutes are to be considered in their generally accepted meaning, and the court has a duty to construe the statute so that it is not void for vagueness when a reasonable and practical construction can be given to its language. *People v. Rosburg,* 805 P.2d 432 (Colo.1991).

Applying these rules of construction, we conclude that "habitual intemperance" is not an unconstitutionally vague term. We

note, first, that the term is used in numerous Colorado licensing statutes. Although the contexts vary slightly, in each statute, the term is used in relation to the repeated and excess use of alcohol or drugs. *Compare, e.g.,* § 12–25–208(1)(i), C.R.S. (1991 Repl.Vol. 5A) (land surveyor can be disciplined for "habitual intemperance with respect to or excess use of any habit-forming drug ... any controlled substance ... or any alcoholic beverage") *with* § 12–40–108(1)(d), C.R.S. (1991 Repl.Vol. 5B) (applicant for optometry license must not be "addicted to the use of any controlled substance, or [show] habitual intemperance in the use of alcoholic liquors"). *See also* § 12–2–123(1)(p), C.R.S. (1991 Repl.Vol. 5A) (accountants); § 12–4–111(2)(j), C.R.S. (1991 Repl.Vol. 5A) (architects); § 12–22–125(2)(a)(II), C.R.S. (1991 Repl.Vol. 5A) (druggists); § 12–25–108(1)(i), C.R.S. (1991 Repl.Vol. 5A) (engineers); § 12–32–107(3)(f), C.R.S. (1991 Repl.Vol. 5A) (podiatrists); § 12–33–117(1)(e), C.R.S. (1991 Repl.Vol. 5A) (chiropractors); § 12–35–118(1)(e), C.R.S. (1991 Repl.Vol. 5A) (dentists); § 12–43–704(1)(e), C.R.S. (1991 Repl. Vol. 5B) (psychotherapists); § 12–58–110(1)(*l*), C.R.S. (1991 Repl.Vol. 5B) (plumbers); *cf.* Colorado Rules of Judicial Discipline 5(a)(3).

The generally accepted meaning of "intemperance" is excess or lack of moderation in an action, and an "habitual" action is one which is "by force of habit." *See Webster's Third New International Dictionary Unabridged* 1175, 1017 (1986). A "habit" is "an acquired or developed mode of behavior or function that has become nearly or completely involuntary." *See Webster's Third New International Dictionary Unabridged* 1017 (1986). And, although in its modern day usage "habitual intemperance" can refer either to the use of alcohol or drugs, the term itself is archaic and has been used synonymously with excessive alcohol consumption. *See Aetna Life Insurance Co. v. Davey,* 123 U.S. 739, 8 S.Ct. 331, 31 L.Ed. 315 (1887) ("the term 'habitual intemperance' characterizes one who uses liquors excessively").

■ Accordingly, as used in the Medical Practices Act, we conclude that the term "habitual intemperance" refers to repeated, uncontrolled, excessive drinking. *See In re Mikesell,* 396 Mich. 517, 243 N.W.2d 86 (1976) (although "habitually intemperate" is "capable of being defined in several ways, [the] only applicable meaning is the abuse of alcohol").

We also conclude that the term "habitual intemperance" is sufficiently specific so that persons licensed to practice medicine can distinguish between permissible and impermissible conduct. *See Kibler v. State,* 718 P.2d 531 (Colo.1986). Repeated, uncontrolled, excessive drinking is objectively recognizable, identifiable behavior; we disagree with respondent that the term fails to describe adequately the standards to which a physician must conform his or her conduct. *See Colorado Dog Fanciers, Inc. v. Denver,* 820 P.2d 644 (Colo.1991) ("Legislation is entitled to a presumption of constitutionality and is not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within its language.").

### B.

■ Insofar as respondent also argues that the term "habitual intemperance" is unconstitutionally vague as applied to her, we disagree. The statute gives fair notice that habitual intemperance is unprofessional conduct and her conduct fell within the prohibition. As the ALJ concluded "there is no real dispute in the record that respondent was habitually drinking to excess from the fall of 1987 to January 29, 1990."

Based upon the ALJ's detailed factual findings, we find no denial of due process in the application of the statutory standards to the evidence adduced at the hearing. As applied to the respondent, the statute is not vague. *See People v. Rosburg, supra; Kibler v. State, supra* ("In light of the fact that the appellant's conduct falls squarely within the prohibitions of [the statute], we are at a loss to discern any way in which [the provision] could be unconstitutionally vague as applied to the circumstances of this case.").

### II.

In urging a reversal of the Board's order of revocation, respondent argues three procedural errors: (1) she did not receive proper notice of the charges; (2) the Board improperly based its decision on facts not found by the ALJ; and (3) the Board considered an improper pleading in its review of the ALJ's decision.

### A.

■ The complaint filed by the Attorney General alleged that respondent's enrollment in the substance abuse treatment program indicated "habitual intemperance" as proscribed by § 12–36–117(1)(i). The ALJ's ultimate conclusion of unprofessional conduct adopted by the Board was based in part, however, on respondent's prior alcohol-related conduct. Respondent contends that the complaint did not give adequate notice that the charges included this prior conduct in violation of due process of law. We disagree.

■ The essence of due process is fair procedure, but no particular or perfect procedure is required so long as the elements of opportunity for hearing and judicial review are present. *Norton v. Colorado State Board of Medical Examiners,* 821 P.2d 897 (Colo.App.1991). Due process is satisfied by providing adequate notice of opposing claims, a reasonable opportunity to defend against those claims, and a fair and impartial decision. *Davis v. State Board of Psychologist Examiners, supra.*

We find no due process violation. Here, the record indicates that in response to respondent's *motion in limine* to restrict certain evidence of prior conduct, portions of the Attorney General's proffered evidence were either limited to the issue of sanctions by agreement of the parties or excluded by the ALJ. Respondent does not complain now that the ALJ erred in so ruling.

Moreover, as we have determined, the charge of "habitual intemperance," by defi-

nition, refers to a course of conduct, and the circumstances of respondent's enrollment in the Virginia substance abuse program necessarily involved her past conduct. And, although respondent could have requested a bill of particulars, moved for a more definite statement, or pursued discovery, *see* § 24-4-105, she did not do so. Respondent also waived prehearing statements. Thus, her allegation that she was "misled" by the Attorney General notwithstanding, the information was available to her.

### B.

▮ As permitted by § 24-4-105(15)(a), C.R.S. (1988 Repl.Vol. 10A), both parties filed exceptions to the ALJ's initial decision with the Board. Respondent's exceptions, *inter alia*, challenged several of the ALJ's factual findings. The exceptions filed by the Attorney General on behalf of the inquiry panel only challenged the sanctions imposed by the ALJ, not the factual findings. However, in answer to the respondent's exceptions, the Attorney General filed a "response to respondent's exceptions" which took issue with numerous factual and legal allegations set forth in respondent's exceptions. Neither party submitted a transcript of the hearing to the Board.

Based upon this, respondent first contends that by "adopting" the Attorney General's exceptions and response to exceptions without reviewing a transcript, the Board improperly modified the findings of fact of the ALJ. We disagree.

▮ A party's challenge to the factual findings of the ALJ must be supported by transcripts made available for the agency's review. *See Davis v. Board of Psychologist Examiners, supra.* Here, respondent challenged numerous factual findings of the ALJ but failed to provide a transcript for the Board's review. *See* § 24-4-105(15)(a). On the other hand, the Attorney General's exceptions did not challenge any fact findings. And, the Attorney General's response to respondent's exceptions took issue with certain assertions made by respondent, but again, made no challenge

to the ALJ's findings of fact. Under these circumstances, it was not error for the Board to consider the exceptions without a transcript.

▮ Furthermore, we do not agree with respondent that the Board modified the ALJ's findings of fact. Although an ALJ's finding of evidentiary fact may not be altered by the Board if supported by the evidence, the Board is not precluded from drawing a different ultimate conclusion therefrom. *Puls v. People ex rel. Woodard*, 722 P.2d 424 (Colo.App.1986). Here, the Board fully accepted the ALJ's factual findings, but was free to reject the ALJ's conclusion as to the appropriate sanction. *See* § 24-4-105(15)(b), C.R.S. (1988 Repl. Vol. 10A).

▮ We also disagree with respondent that the Attorney General's inclusion of certain facts in its exceptions and response to respondent's exceptions which were not contained in the ALJ's findings requires reversal of the Board's order.

Initially, we note that most of the contentions in the Attorney General's pleadings which respondent characterizes as "facts" are not. Instead, they are responses to arguments raised by respondent as to evidentiary and legal rulings made by the ALJ in her initial decision.

Further, from our review of the record, in its exceptions the Attorney General asserted only one fact of any significance which is neither a response to respondent's legal arguments nor specifically or implicitly contained in the ALJ's initial decision. That reference is to a 1983 incident in which respondent assisted in surgery while in a hypoglycemic state.

Evidence about that incident had been excluded by the ALJ in response to respondent's *motion in limine*. Because the Attorney General did not specifically challenge the ALJ's ruling excluding this evidence, we agree that it was improper to refer to this fact in her argument for a more stringent sanction.

However, the Board, in reaching its decision, had before it the ALJ's exhaustive

20–page written decision. In that decision the ALJ fully discussed the minimal relevance of this evidence and the reasons for excluding it under C.R.E. 403. Thus, we conclude that there was no prejudice to respondent.

## C.

Insofar as respondent raises for the first time on appeal an objection to the filing of the Attorney General's response to exceptions, we do not address it.

## III.

The essence of defendant's next contention is that, although she does not dispute that she is an alcoholic, because there was no finding by the ALJ or the Board that her actions affected her practice, (1) a finding of habitual intemperance cannot be sustained, (2) there was no basis for the Board's sanction of revocation, and (3) the sanction imposed by the Board is contrary to the purpose of the Medical Practice Act. We disagree.

## A.

■ Respondent argues that because the Board adopted the ALJ's finding that "no instance of any impact on her practice has been established," the evidence is insufficient to support a determination that she is "habitually intemperate." Respondent's argument is premised on the assumption that "habitual intemperance" requires evidence that her practice was adversely affected. We disagree.

A physician is subject to discipline for "unprofessional conduct." Section 12–36–118. As relevant here, unprofessional conduct includes "habitual intemperance." Section 12–36–117(1)(i).

An explicit purpose of the Colorado Medical Practice Act is to regulate the practice of medicine to protect the public from unqualified physicians. Section 12–36–102, C.R.S. (1991 Repl.Vol. 5B). Implicit in the inclusion of "habitual intemperance" as a ground for discipline is that such condition is related to the health, safety, and welfare of the public which may receive treatment from the physician.

Contrary to respondent's assertion, the statute does not require that there be an actual harmful effect on a medical practice before the Board can take action against a physician. *See Dixon v. State Board of Optometric Examiners*, 39 Colo.App. 200, 565 P.2d 960 (1977) (If the concept of licensing practitioners dealing with public health is to have any vitality and purpose, it is unreasonable to require proof of injury to a patient before approving revocation of a license). Rather, adverse manifest behavior affecting the practice, if any, is relevant to the degree of severity of the sanction imposed for the unprofessional conduct of habitual intemperance.

Here, possible sanctions include a letter of reprimand, public censure, probation, suspension, or revocation. Section 12–36–118(5)(g)(III), C.R.S. (1991 Repl.Vol. 5B). This considerable discretion vested in the Board on the matter of discipline "serves the useful purpose of permitting the Board to effectively address the varied degrees of culpability that are often associated with acts of professional misconduct and to tailor an appropriate sanction to the particular facts and circumstances of the case." *Kibler v. State, supra. See Glenn v. Colorado State Board of Medical Examiners*, 131 Colo. 586, 284 P.2d 230 (1955).

Thus, although evidence that her practice was not affected or that no patient had been harmed is relevant for the Board to consider in imposing appropriate discipline, the lack of such evidence is not determinative of the question of whether a physician is "habitually intemperate." *See Major v. Department of Professional Regulation*, 531 So.2d 411 (Fla.Dist.Ct.App.1988). *See also In re Kelley*, 52 Cal.3d 487, 276 Cal. Rptr. 375, 801 P.2d 1126 (1990) (attorney discipline).

## B.

■ Respondent next argues that since the degree to which "habitual intemperance" affected her medical practice is a relevant factor in the choice of an appropriate sanction and since there was no evi-

dence that her practice was harmed, the Board erred in revoking her license. Again, we disagree.

■ The Board is afforded great discretion in its determination of the appropriate sanction for unprofessional conduct, and its determination should be upheld on review unless it bears no relation to the conduct, is a gross abuse of discretion, or is manifestly excessive in relation to the needs of the public. Also, a reviewing court may not substitute its judgment for that of the Board as to what constituted appropriate sanctions. *Colorado State Board of Medical Examiners v. Reiner,* 786 P.2d 499 (Colo.App.1989).

Here, in considering an appropriate sanction, the Board had before it, among other things, the following facts:

(1) Respondent was an alcoholic and was habitually intemperate.

(2) In 1982–83 respondent illegally prescribed weight reduction medication. The illegal prescriptions were related to her alcohol use.

(3) In 1984 respondent was convicted of 15 counts of felony distribution of controlled substance, spent one year in jail and received five years probation.

(4) The felony convictions resulted in suspension of her license from 1984–86.

(5) In 1986 her license was reinstated and she was put on probation for 5 years and conditionally allowed to practice medicine pursuant to a stipulation with the Board.

(6) In 1987 she was convicted of DUI, completed an alcohol treatment program and therapy, and took antabuse.

(7) From January—February 1989 she violated the terms of her stipulation with the Board by failing to arrange for observation of her practice by her practice monitor.

(8) In 1991 she enrolled in an in-patient alcohol program because she had become so intoxicated at a wedding that her family had threatened that if she did not go into treatment they would turn her in to the Board. This precipitated the charges here.

Based upon this record, we cannot say that the Board abused its discretion in revoking respondent's license.

■ Nor do we consider this sanction to be inimical to the purpose of the Medical Practice Act as respondent alleges. Contrary to respondent's contention, the record establishes that the sanction here was not imposed because respondent sought treatment for her alcoholism, but for a course of conduct which entitled the Board to conclude that to allow respondent to continue to practice medicine would not be in the public interest. *See Dixon v. State Board of Optometric Examiners, supra; see also Major v. Department of Professional Regulation, supra.*

The order is affirmed.

PLANK and ROTHENBERG, JJ., concur.