Shanna D. HALL, M.D., Applicant–Appellant,

v.

COLORADO STATE BOARD OF MEDICAL EXAMINERS, comprising the following: Margaret A. Cary, M.D., Stuart A. Gottesfeld, M.D., Gilbert Hermann, M.D., Louis B. Kasunic, M.D., Steven B. Katzman, Nancy Billings–Gerlock, and Janice J. Ugale, M.D., Respondents–Appellees.

No. 92CA1868.

Colorado Court of Appeals, Div. V.

Feb. 10, 1994.

As Modified on Denial of Rehearing March 10, 1994.

Certiorari Denied July 18, 1994.

Cooper & Kelley, P.C., Paul D. Cooper, John R. Mann, Denver, for applicant-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Matthew E. Norwood, Asst. Atty. Gen., Denver, for respondents-appellees.

Opinion by Judge BRIGGS.

Shanna D. Hall (applicant) appeals a final order of the Colorado State Board of Medical Examiners (Board) denying her a license to practice medicine. She asserts that the Board's denial of a medical license on grounds of unprofessional conduct was not supported by the evidence and was an abuse of discretion. We affirm.

The Board charged the applicant with three counts of unprofessional conduct: (1) having engaged in excessive use of drugs; (2) having been under such a mental disability as to render her unable to practice medicine; and (3) having committed two or more acts which failed to meet generally accepted standards of medical practice. See §§ 12–36–117(1)(i), (o ), and (p), C.R.S. (1991 Repl.Vol. 5B). The Board concluded that her application should therefore be denied. See §§ 12–36–107(2) and 12–36–116, C.R.S. (1991 Repl. Vol. 5B). The applicant requested and was granted a hearing to contest the Board's decision. See § 24–4–104(9), C.R.S. (1988 Repl.Vol. 10A).

The Administrative Law Judge (ALJ) concluded that the applicant had not engaged in excessive use of drugs and did not have such a mental disability as to render her unable currently to practice medicine, but that she had committed two or more acts which failed to meet generally accepted standards of medical practice. However, because there had been no further adverse reports and no injury to the patient as a result of the substandard acts, the ALJ recommended that the applicant be granted an unrestricted license.

Pursuant to § 24–4–105(14), C.R.S. (1988 Repl.Vol.), the Regulatory Law Section of the Office of the Attorney General, as counsel to the Board, filed exceptions to several of the ALJ's conclusions, as well as the recommendation that the applicant be granted an unrestricted license. The applicant's response to the Board's exceptions included her own exceptions to other conclusions of the ALJ. Neither party objected to any findings of evidentiary fact reported by the ALJ.

In its final order, the Board rejected the ALJ's findings of ultimate fact and conclusions of law to which exceptions had been filed by the Attorney General and concluded that the applicant had engaged in all three acts of unprofessional conduct charged. Although it denied her application for an unrestricted license, the Board offered the applicant a probationary license. The probationary conditions included a period of probation for at least five years; continued treatment with a therapist of the applicant's choosing, acceptable to the Board; and practice in a

group setting acceptable to the Board. Because the applicant was not willing to accept any restrictions on her license, this appeal followed. *See* §§ 24–4–104(9) and 24–4–106, C.R.S. (1993 Cum.Supp.).

## I.

■ The applicant first contends that the Board failed to comply with the Administrative Procedure Act, § 24–4–105(15)(a), C.R.S. (1993 Cum.Supp.), by not reviewing the transcript of the proceedings before the ALJ and that the Board's rejection of the ALJ's findings and substitution of its own was therefore in error. We disagree.

Section 24–4–105(15)(a) requires that:

Any party who seeks to reverse or modify the initial decision of the administrative law judge ... shall promptly file with the agency a designation of the parts of the transcript of the proceedings.... No transcription is required if the agency's review is limited to a pure question of law.

Thus, only a party's challenge to the factual, evidentiary findings of the ALJ must be supported by transcripts made available for the agency's review. *See Davis v. Board of Psychologist Examiners*, 791 P.2d 1198 (Colo. App.1989).

Here, because the ALJ's findings of evidentiary fact were not challenged by either party, they were expressly adopted by the Board. Its review was limited to conclusions of law and findings of ultimate fact by the ALJ based on undisputed evidentiary facts. Therefore, no error resulted from not having a transcript of the proceedings to review. *See Colorado State Board of Medical Examiners v. Hoffner*, 832 P.2d 1062 (Colo.App. 1992); *Schaffer v. District Court*, 719 P.2d 1088 (Colo.1986).

## II. Excessive Use of Drugs

■ It is not disputed that on two occasions, in late 1978 or early 1979, and again in 1986, the applicant attempted suicide by ingesting an overdose of tablets that contained codeine, a controlled substance.

The applicant nevertheless asserts that, as a matter of law, it was error to conclude that one or two overdoses of a controlled substance was an "excessive use" of drugs. She argues that under § 12–36–117(1)(i), "excessive use" should be construed to require repeated prohibited behavior, not merely a single occurrence. We disagree.

Section 12–36–117(1)(i) defines unprofessional conduct as:

Habitual intemperance or excessive use of any habit-forming drug, as defined in section 12–22–102(13), or any controlled substance, as defined in section 12–22–303(7).

In construing a statute, courts must determine and give meaning to the intent of the General Assembly. We must look first to the language of the statute and give words and phrases their plain and ordinary meaning. Section 2–4–101, C.R.S. (1980 Repl.Vol. 1B); *Colorado State Board of Nursing v. Crickenberger*, 757 P.2d 1167 (Colo.App. 1988).

"Intemperance" is defined as "excess or lack of moderation in an action." *Webster's Third New International Dictionary* 1175 (1986). In contrast, "habitual intemperance" is *"repeated,* uncontrolled, and excessive drinking." *Colorado State Board of Medical Examiners v. Hoffner, supra,* at 1066 (emphasis added).

"Excessive" is:

characterized by or present in excess as (a) exceeding the usual, proper, or normal (b) very large, great, or numerous: greater than usual (c) given to excess: intemperate.

*Webster's Third New International Dictionary* 792 (1986). "Excessive use" under the statute contains no temporal modifier, such as "habitual." Thus, for use to be excessive, it is not essential that it be repeated over time.

The applicant argues that because "habitual intemperance" requires repetition of the proscribed conduct over time, and because of the close proximity of the term "excessive" to "habitual intemperance" in the statute, we should similarly construe the language of § 12–36–117(1)(i) as defining unprofessional conduct only as the *repeated* excessive use of drugs. However, this would deprive the Board of the authority even to consider such

conduct when reviewing an applicant for a medical license regardless of how severe or recent the conduct, and regardless of its relevance to the applicant's current qualifications for a license. We decline to construe the statute in such a manner.

The evidence of two separate overdoses supports the Board's conclusion that the applicant 'engaged in excessive use of a controlled substance. Thus, the Board properly determined that the applicant engaged in unprofessional conduct as defined by § 12–36–117(1)(i).

### III. Mental Disability

■ It is undisputed that the applicant, who holds a probationary license in another state, has suffered·a mental disability in the past which prevented her from practicing medicine. However, she asserts that as a matter of law § 12–36–117(1)(o ) should be read to define as unprofessional conduct only a *present* mental disability that prevents the applicant from practicing medicine. We again disagree.

Section 12–36–117(1)(o ) defines unprofessional conduct as:

> Such physical or mental disability as to render the licensee unable to perform medical services with reasonable skill and with safety to the patient.

We agree that this section appears to refer to a present mental disability. However, it is part of the statutory scheme which provides sanctions to be imposed in certain defined circumstances on those currently holding medical licenses.

In contrast, § 12–36–107(2) provides that: "[T]he board may grant a license subject to terms of probation or may refuse to grant a license to any such person if it has reasonable grounds to believe he *has committed* any of the acts or offenses defined in this article as unprofessional conduct." (emphasis added). A plain reading of this provision is that the Board may consider past events.

The applicant argues that the Board's concern must be whether her past conduct and mental disability indicate any present risk to the health, safety, and welfare of a patient who may receive treatment. We agree that this is the appropriate concern. *See generally* S. Carr, *Effects of the ADA on Licensing and Regulation of Professionals,* 23 Colo.Lawyer 343 (Feb.1994). We further recognize that it may seem a misnomer to classify a past or current mental disability, a condition which may involve no fault of any kind, as "unprofessional conduct." ·

We nevertheless conclude that § 12–36–117(1)(o ) should be construed to include as "unprofessional conduct" a past mental disability that rendered the applicant at the time unable to perform medical services. This permits the Board to consider the nature, extent, and time of the disability, together with any other relevant considerations, and to tailor a sanction, if any, appropriate to the applicant's current qualifications to practice medicine. *See Colorado State Board of Medical Examiners v. Hoffner,* supra.

We therefore conclude the Board did not err in determining that the applicant's past mental disability fell within the definition of "unprofessional conduct" as adopted in § 12–36–107.

### IV. Substandard Medical Care

The applicant argues that it was error to conclude that she had engaged in unprofessional conduct as defined by § 12–36–117(1)(p) because the conduct in question involved a single treatment of a single patient, not two or more acts as required by the statute. Once again we disagree.

The undisputed findings of evidentiary fact made by the ALJ included the following concerning the treatment by the applicant of E.G., a six-week old baby:

72. Between 10:00 a.m. and approximately 12:30 p.m., Applicant ... made eight to nine attempts to draw blood from E.G.

76. Between 12:30 and 1:00 p.m., E.G., his parents and his sibling left the clinic.... Applicant directed the family to bring E.G. back to the clinic in the afternoon.... Shortly before 3:00 p.m., E.G. and his mother returned to the clinic.

77. E.G. had club feet and both feet were in casts.... Applicant decided to attempt

to draw blood from the foot. . . . the cast was removed by approximately 3:15 p.m.

79. After the cast was removed, Applicant attempted unsuccessful blood draws by an arterial stick and a venipuncture. She also performed additional unsuccessful arterial sticks in the antecubital space of the left arm.

81. Also at approximately 4:00 p.m., Applicant observed several seconds of tremor in E.G.'s right arm and leg. . . . She observed what she considered to be a right focal seizure, a rhythmic jerking of the right arm and leg. Applicant then gave E.G. the injection of Ativan.

84. The Applicant did not attempt to draw blood after administering the Ativan.

89. E.G. was admitted to Children's Hospital. . . . Approximately 30 · punctures were observed.

96. Under ideal conditions in a hospital, where others are accessible, the customary standard is to make no more than three to five attempts [to draw blood]. More than that number can be appropriate in a rural setting where the nearest facility is a 20 minute drive away and transportation is a problem.

97. E.G.'s parents had a car that was available to transport E.G. to another facility if necessary. . . . Applicant made no attempt during the day to arrange transportation for E.G.

99. The preponderance of the evidence was that Applicant made 14 to 16 attempts to draw blood from E.G.

■ Based on these evidentiary findings, the ALJ reached several conclusions related to the charge of unprofessional conduct under § 12–36–117(1)(p). Specifically, the ALJ determined that the number of attempts the applicant made to withdraw blood:

> violated the standard of care under the circumstances. Each attempt after the fifth attempt constituted a separate substandard act.

> The Applicant did engage in unprofessional conduct in her substandard care of E.G. The Board may deny her a license on this basis.

The ALJ concluded that this constituted unprofessional conduct under § 12–36–117(1)(p), and the Board adopted this conclusion.

The applicant argues that the multiple attempts to draw blood should not be considered more than one act because they occurred during the course of a single treatment of the patient. However, § 12–36–117(1)(p) provides that two or more acts may occur:

> whether the two or more acts or omissions occur during a single treatment of one patient, during the course of treatment of one patient, or during the treatment of more than one patient.

The Board was therefore not precluded from finding that the applicant committed two or more acts of substandard medical care merely because they occurred during the single treatment of one patient.

The conclusion that the applicant's conduct constituted two or more acts of substandard medical care was an ultimate finding of fact based on undisputed evidentiary facts. *See Colorado Board of Medical Examiners v. Hoffner, supra; Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982).

■ An ultimate finding of fact will be set aside by a reviewing court only if, assuming there is evidence to support the finding, it is contrary to law; stated conversely, it will be sustained if it has a reasonable basis in law. *See Lee v. State Board of Dental Examiners, supra; see also Ricci v. Davis*, 627 P.2d 1111 (Colo.1981) (warrant in the record and a rational basis in law); *People ex rel. Woodard v. Brown*, 770 P.2d 1373, 1379 (Colo.App. 1989) ("Since the findings of ultimate fact are supported by substantial evidence and have a reasonable basis in law, we find no abuse of the Board's discretion warranting reversal.").

The Medical Practice Act permits the Board to refrain from granting an unrestricted license to practice medicine if the applicant "has done *any* of the acts defined in section 12–36–117." Section 12–36–116 (emphasis added). In amending § 12–36–117(1)(p) to provide expressly that two or more acts of substandard treatment constitute unprofessional conduct even if the acts

82

occur during a single course of treatment, and in making no corresponding change in § 12–36–116, which incorporates § 12–36–117(1)(p) as a basis for refraining from issuing a license, the General Assembly has made clear that the Board has authority to deny an unrestricted license based on the kind of conduct in question here.

The evidence is undisputed that the applicant made 14 to 16 attempts to draw blood from E.G. over a period of several hours in the morning and, after a two to three hour break, again in the afternoon. Our review of the record satisfies us that both the ALJ and the Board properly understood and applied the applicable standards to the evidentiary facts in determining that the applicant's treatment of E.G. involved two or more acts of substandard care, constituting unprofessional conduct. *See Colorado State Board of Medical Examiners v. Slonim*, 844 P.2d 1207 (Colo.App.1992); *People ex rel. Woodard v. Brown, supra.*

V.

■ The applicant's final contention is that, even if her conduct constituted unprofessional conduct as defined in § 12–36–117, it was an abuse of discretion to refuse to grant her an unrestricted license. We disagree.

Upon finding that an applicant has engaged in unprofessional conduct, the Board is afforded wide discretion in determining whether to deny a license, to grant a license on specified conditions, or to grant an unrestricted license. *See* §§ 12–36–107(2) and 12–36–116. The Board's determination should be upheld on review unless it bears no relation to the applicant's conduct and abilities, is an abuse of discretion, or is manifestly excessive in relation to the needs of the public. *See Colorado State Board of Medical Examiners v. Hoffner, supra.*

In the circumstances presented here, the denial of an unrestricted medical license was related to the applicant's conduct and abilities, was not an abuse of discretion, and was not manifestly excessive in relation to the needs of the public. *Cf. Colorado Board of*

*Medical Examiners v. Robertson*, 751 P.2d 648 (Colo.App.1987).

The order is affirmed.

MARQUEZ and DAVIDSON, JJ., concur.