Helen RIGMAIDEN, Plaintiff–Appellee,

v.

COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING, Defendant–Appellant.

No. 05CA0487.

Colorado Court of Appeals, Div. I.

Sept. 7, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S.2005.

Boulder County Legal Services, Joel R. Hayes, Jr., Boulder, Colorado, for Plaintiff–Appellee.

John W. Suthers, Attorney General, Ashley Moller Klein, Assistant Attorney General, Lisa Brenner Freimann, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, the Colorado Department of Health Care Policy and Financing (the department), appeals the judgment of the district court reversing the department's final agency decision determining that plaintiff, Helen Rigmaiden, was no longer eligible to receive benefits under the Home- and Com-

munity-based Services for the Elderly, Blind, and Disabled (HCBS) program. The district court determined that without a written hearing transcript, the department could not reverse the initial decision allowing benefits. We affirm.

## I. Medicaid Program

The state administers a Medicaid program known as HCBS, which is jointly funded by the state and the federal governments. *See* 42 U.S.C. § 1396n(c)(1); § 26-4-601, et seq., C.R.S.2005. HCBS provides home care services, such as dressing, bathing, cooking, and cleaning, to persons who otherwise would require institutionalization. Sections 26-4-602, 26-4-607, C.R.S.2005; *Morgan v. Colo. Dep't of Health Care Policy & Fin.*, 56 P.3d 1136 (Colo.App.2002).

The basic eligibility requirements of HCBS are set forth in § 26-4-606(1)(b), C.R.S.2005, which provides, in relevant part, that home- and community-based services "shall be offered only to persons ... [w]ho [among other requirements] are in need of the level of care available in a nursing home." As relevant here, a person is certified as eligible for nursing facility level of care "[w]hen the score in a minimum of two [activities of daily living] ... is at least a(2)." Colorado Department of Health Care Policy and Financing Reg. 8.401.15.A, 10 Code Colo. Regs. 2505-10.

## II. Facts

Rigmaiden suffers from a number of physical ailments including chronic fatigue syndrome, fibromyalgia, sleep apnea, gastroesophageal reflux disease, and back pain. In November 2003, Long Term Care Options, LLC (LTCO), a peer review organization operating under contract with the state, approved Rigmaiden for HCBS because she met the functional impairment in activities of daily living necessitating nursing home level of care. Specifically, Rigmaiden was assessed a score of two in the activities of mobility and transferring. In March 2004, LTCO performed an additional assessment on Rigmaiden and determined that she no longer needed nursing home level care because she did not score a two in any of the categories of activities of daily living.

Rigmaiden requested a hearing before an administrative law judge (ALJ) under § 24-4-105, C.R.S.2005. After considering evidence submitted by both parties, the ALJ determined that Rigmaiden was entitled to receive benefits because she had sufficient functional needs in the activities of mobility and transferring and that her physical condition and abilities regarding activities of daily living had not improved since November 2003.

The ALJ's initial decision included a notice to the parties stating,

> If you feel that a *FINDING OF FACT* is wrong, you *must* order a transcript of the hearing. A Finding of Fact is often based on witness testimony and a transcript of the hearing is the only way to verify what was said. In order for the Office of Appeals to decide if a factual finding is correct, we would need to review the testimony. If you can't afford a transcript, you must first ask the Office of Appeals, *in writing*, to let you file a copy of the tape(s) from the hearing instead.

LTCO filed exceptions to the initial decision with the department's office of appeals and submitted a tape recording of the hearing before the ALJ. LTCO did not ask the office of appeals whether it could submit a tape recording of the hearing in lieu of a transcript.

On review, the department considered the tape recording of the hearing before the ALJ and reversed the ALJ's decision, concluding that the ALJ's factual findings contained errors that were contrary to the weight of the evidence and that the ALJ had improperly applied the department's rules.

Rigmaiden then sought judicial review in the district court under § 24-4-106(7), C.R.S. 2005. The district court reversed the department's final decision. It ruled that the department erred by reversing the ALJ's findings in the absence of a written transcript.

The department now appeals the district court's decision under § 24-4-106(9), C.R.S. 2005.

## III. Discussion

The department contends that the office of appeals properly reversed the ALJ's initial decision even though it had not received a typewritten transcript as mandated for the appeal process by the Administrative Procedure Act, § 24–4–105(15)(a), C.R.S.2005. We disagree.

■ If a reviewing court finds an agency decision to be contrary to law or unsupported by substantial evidence in the record, it shall set aside the decision. Section 24–4–106(7), (11), C.R.S.2005; *Moczygemba v. Colo. Dep't of Health Care Policy & Fin.*, 51 P.3d 1083 (Colo.App.2002).

■ When reviewing final agency actions, we stand in the same position as the district court. We must examine the record in the light most favorable to the agency decision. Whether the record contains substantial evidence to support the agency decision is a question of law. *Martelon v. Colo. Dep't of Health Care Policy & Fin.*, 124 P.3d 914 (Colo.App.2005); *Colo. State Bd. of Med. Exam'rs v. Davis*, 893 P.2d 1365 (Colo.App. 1995).

### A.

■ We first address whether LTCO was required to file a written transcript of the hearing before the ALJ pursuant to § 24–4–105(15)(a). We conclude that a transcript was necessary for the department's review.

Section 24–4–105(15)(a) requires that, for agency review of an initial decision, a transcript be made of either court reporter stenographer notes or tape recorded proceedings. As relevant here, the statute requires:

Any party who seeks to reverse or modify the initial decision of the administrative law judge or the hearing officer shall file with the agency

... a designation of the relevant parts of the record described in subsection (14) of this section and of the parts of the transcript of the proceedings which shall be prepared and advance the cost therefor.... *The transcript* or the parts thereof which may be designated by the parties or the agency *shall be prepared by the report-*

*er or,* in the case of an electronic recording device, *the agency* and shall thereafter be filed with the agency. No transcription is required if the agency's review is limited to a pure question of law.

(Emphasis added.)

Thus, only a party's challenge to the factual, evidentiary findings of the ALJ must be supported by transcripts made available for the agency's review. *See Hall v. Colo. State Bd. of Med. Exam'rs*, 876 P.2d 77 (Colo.App. 1994); *Davis v. Bd. of Psychologist Exam'rs*, 791 P.2d 1198 (Colo.App.1989). No transcript is necessary when a party challenges the ALJ's conclusions of law and findings of ultimate fact. *See* § 24–4–105(15)(a); *Tepley v. Pub. Employees Ret. Ass'n*, 955 P.2d 573 (Colo.App.1997); *Colo. State Bd. of Med. Exam'rs v. Hoffner*, 832 P.2d 1062 (Colo.App. 1992).

■ The distinction between evidentiary facts and ultimate conclusions of fact is not always clear. In general, however, evidentiary facts are the detailed factual or historical findings upon which a legal determination rests. *State Bd. of Med. Exam'rs v. McCroskey*, 880 P.2d 1188 (Colo.1994).

■ In contrast, findings of ultimate fact involve a conclusion of law, or at least a mixed question of law and fact, and settle the rights and liabilities of the parties. Unlike evidentiary facts, ultimate conclusions of fact usually are phrased in the language of the controlling statute or legal standard. *State Bd. of Med. Exam'rs v. McCroskey, supra; Moczygemba v. Colo. Dep't of Health Care Policy & Fin., supra; see also* § 24–4–105(15)(b), C.R.S.2005.

Here, the ALJ made the following findings of evidentiary facts in support of its conclusion that Rigmaiden should have scored a two in mobility:

[Rigmaiden] has chronic fatigue syndrome and very little energy. It is difficult for her to begin moving in the morning until she has stretched her muscles. She describes five out of seven days as "bad days," when she is sometimes too weak to get out of bed. When walking she must watch the floor and step carefully so she

does not fall. She fell and hurt herself once in the fall of 2002.

The ALJ also determined that, based on the following evidentiary facts, Rigmaiden should have scored a two in transferring because she "requires standby or hands on assistance for safety":

[Rigmaiden] can drive a car, but finds it difficult due to weakness and muscles-spasms. Therefore, her mother drives her to doctor's appointments. She suffers from balance problems and has difficulty going up and down stairs. Due to the difficulty of climbing the stairs of an RTD bus she requests the use of Access–A–Ride. She has fallen out of chairs when trying to balance herself.

In its exceptions to the initial decision, LTCO challenged both the ALJ's evidentiary facts and conclusions of law. Specifically, LTCO included certain facts that were not contained in the ALJ's findings regarding mobility:

Although [Rigmaiden] does have weakness and stiffness she reported that she is able to ambulate independently and without falls if she steps slowly and carefully. During the hearing [Rigmaiden] was asked if she needs assistance to stretch each morning prior to ambulating. She stated she does not need assist[ance] and completes the stretching independently. [Rigmaiden] reported she does not use any assistive devices such as a cane or walker while ambulating either inside or outside of her home. During [Rigmaiden's] initial assessment she reported the need for stand by assistance when walking due to blackouts and falls. [Rigmaiden] did not report a continued need for this assistance during her six-month assessment at which time her score decreased. Although [Rigmaiden] reported some falls in the past she stated she had not fallen in the last six months.

The department concedes that the final agency decision reversed both evidentiary facts and ultimate conclusions of law. Indeed, the department's final agency decision included additional facts not found by the ALJ:

At the initial assessment in November 2003, the LTCO case manager gave [Rigmaiden] a score of two in the mobility category. [Rigmaiden] was living in her mother's basement, which required frequent negotiation of stairs. [Rigmaiden] had a fall walking up the stairs when her leg gave out and she fell forward, hitting her head. . . .

At the March 2004 assessment, the LTCO case manager found [Rigmaiden] had a change in circumstances, and gave [Rigmaiden] a score of one in mobility, citing no falls were reported within the last six months. At [the] hearing, [Rigmaiden] testified that since the November assessment, she moved into a facility that has an elevator, and she doesn't "have to deal with steps now." She further testified that she hasn't had a recent fall. The ALJ awarded two points in mobility, stating, "When walking, she must watch the floor and step carefully so she does not fall. She fell and hurt herself in the fall of 2002", [sic] and thus found she was not safe to ambulate or move between locations alone. . . . This finding is not reflective of the March 2004 assessment, and the record does not support a score of two in the mobility category.

In his decision, the ALJ found that [Rigmaiden] should have been scored a two in transferring. The [initial decision] states that [Rigmaiden] suffers from balance problems and has difficulty going up and down stairs. . . . This is not an activity that is properly scored under transfers. Furthermore, [Rigmaiden] testified at [the] hearing that she does not have to negotiate steps in her current living situation. . . .

At [the] hearing, [Rigmaiden] testified that she is able to get herself in and out of bed, and ambulates independently in her apartment. This does not support a score of two in this category.

Because LTCO challenged, and the department reversed, the ALJ's findings of evidentiary facts, in addition to conclusions of law, a transcript of the hearing was required to be filed pursuant to § 24–4–105(15)(a).

## B.

■ Next, we address whether a tape recording of an administrative hearing constitutes a transcript under § 24–4–105(15)(a). We conclude that it does not.

■ In construing a statute and determining legislative intent, we rely on the language of the statute and give the words used their plain and ordinary meaning. Section 2–4–101, C.R.S.2005; *see also In re Title, Ballot Title & Submission Clause*, 961 P.2d 1077 (Colo.1998) (when legislative language is unambiguous, a court must give effect to the plain and ordinary meaning of the statute).

The term "transcript" is not defined in the statute. "Transcript" is commonly defined as "[a] handwritten, printed, or typed copy of testimony given orally; [especially], the official record of proceedings in a trial or hearing, as taken down by a court reporter." *Black's Law Dictionary* 1535 (8th ed.2004).

Hence, the plain meaning of § 24–4–105(15)(a) requires that the party appealing the initial decision of the ALJ must submit a written or typed copy of the tape recorded hearing. *See also* § 24–4–105(13), C.R.S. 2005 ("When required, the administrative law judge or the hearing officer shall cause the proceedings, or any portion thereof, to be transcribed, the cost thereof to be paid by the agency when it orders the transcription or by any party seeking to reverse or modify an initial decision of the administrative law judge or the hearing officer.").

The department's reliance on *Schaffer v. District Court*, 719 P.2d 1088 (Colo.1986), is misplaced. The court in *Schaffer* held that § 24–4–106(6), C.R.S.2005, does not require that a complete typewritten transcript of an evidentiary proceeding before an agency be included as part of the record for meaningful judicial review. However, the court specifically distinguished § 24–4–106 and § 24–4–105. As the court in *Schaffer* pointed out, § 24–4–106 governs the requirements for judicial review of an agency decision; it does not to the situation presented in this case—review of an initial apply decision of an ALJ by the agency involved, which is governed by § 24–4–105. The *Schaffer* court reasoned that "[a] simplified record would facilitate access to the courts and serve the interests of justice." *Schaffer v. Dist. Court, supra,* 719 P.2d at 1090. Section 24–4–105 does not apply to judicial review of an initial decision. Cf. *Garvey v. Freeman*, 397 F.2d 600 (10th Cir.1968) (administrative due process is not necessarily judicial due process). Furthermore, unlike § 24–4–105(15)(a), the record described in § 24–4–106(6) does not specifically include a transcript of the proceedings. Section 24–4–106(6) provides:

> In every case of agency action, the record, unless otherwise stipulated by the parties, shall include the original or certified copies of all pleadings, applications, evidence, exhibits, and other papers presented to or considered by the agency, rulings upon exceptions, and the decision, findings, and action of the agency. Any person initiating judicial review shall designate the relevant parts of such record and advance the cost therefor. As to alleged errors, omissions, and irregularities in the agency record, evidence may be taken independently by the court.

Moreover, contrary to the department's contention, our analysis here is not governed by Colorado Department of Health Care Policy and Financing Reg. 8.057.9.D, which allows for the filing of an administrative hearing tape upon review by the office of appeals of an initial decision. Those regulatory provisions do not apply to the district court's review of the agency's decision or our review of the district court's decision. More important, they conflict with the plain language of the statute. Reg. 8.057.9.D provides in part: "A transcript or a copy of the hearing tape is required where the party filing the exceptions asserts that the findings of fact in the Initial Decision are not supported by the weight of the evidence." That regulation also provides that if a tape recording is requested, such information shall be disclosed in the exceptions.

In contrast to the regulation, § 24–4–105(15)(a), which applies to any situation where a "party ... seeks to reverse or modify the initial decision of the administrative law judge or the hearing officer," mandates that a transcript be provided. Section 24–4–105(15)(a) and its provisions must govern our

analysis. *See Martelon v. Colo. Dep't of Health Care Policy & Fin., supra.*

Had neither party filed an exception, the result might be different. We would then turn to regulations adopted by the medical services board. Sections 24–4–105(14)(b)(I), 25.5–1–107(1)(a), C.R.S.2005; *see also Martelon v. Colo. Dep't of Health Care Policy & Fin., supra.* Section 24–4–105(14)(b)(I) specifically provides that in the absence of exceptions being filed, initial decisions are reviewed in accordance with departmental regulations.

■ However, in the context of an agency review of exceptions from an initial decision, we are guided by a statutory provision that is clearly contrary to departmental regulations. Any regulation that is inconsistent with or contrary to a statute is void. *Ettelman v. Colo. State Bd. of Accountancy,* 849 P.2d 795 (Colo.App.1992). Here, the regulations provided a procedure disallowed by § 24–4–105 in cases where exceptions are filed.

Finally, we note that the notice on the ALJ's initial decision comports with our conclusion that a typewritten transcript of the hearing is required when challenging the factual findings of the ALJ. Only if certain conditions—which are not applicable here—are met can the tape recording of the hearing be submitted in lieu of a transcript for agency review. If a tape recording constituted a transcript, the notice provision allowing an appealing party who could not afford a transcript to submit a "copy of the tape(s) from the hearing" would be superfluous. The General Assembly obviously understood the distinction; otherwise it would not have distinguished between circumstances where exceptions were not taken and tape recordings were acceptable, § 24–4–105(14)(b)(I), and situations where exceptions were taken and transcripts required, § 24–4–105(15)(a).

While the requirement of a written transcript may appear antiquated in this age of computers and electronic communication, it is not our province to rewrite the clear language of statutes. *See Dove Valley Bus. Park Assocs., Ltd. v. Bd. of County Comm'rs,* 945 P.2d 395, 403 (Colo.1997) ("Absent constitutional infringement, it is not our province to rewrite the statutes.").

Because the department did not have before it a written transcript of the ALJ's hearing, the district court's order must be affirmed.

## IV. Remaining Contentions

In light of our disposition, we need not address the department's remaining contentions.

The judgment is affirmed.

JUDGE MÁRQUEZ and JUDGE TERRY concur.