**COLORADO REAL ESTATE COMMISSION, Petitioner– Appellee,**

v.

**Alfred E. BARTLETT, Respondent– Appellant.**

**No. 10CA1489.**

Colorado Court of Appeals, Div. I.

June 23, 2011.

§ 24–51–1105, C.R.S.2010.

John W. Suthers, Attorney General, Lisa Brenner Freimann, First Assistant Attorney General, Melissa Phipps, Assistant Attorney General, Stacey Chapman, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Sheila H. Meer, P.C., Sheila H. Meer, Diana R.M. Schatz, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge MILLER.

Respondent, Alfred E. Bartlett, appeals the final agency order of the Colorado Real Estate Commission (the Commission) revoking his real estate broker's license, on the grounds that the Commission lacks authority to impose discipline for attempted crimes and that it failed to properly address evidence of his rehabilitation. We affirm.

## I. Background

The administrative law judge (ALJ) found that respondent communicated for several months via the Internet with an undercover detective from the Colorado Springs Police Department who was posing as a thirteen-year-old girl named Tiffany. Respondent initiated discussion about what Tiffany was wearing, what was underneath her clothing, and his desire to have sexual contact with her. He asked Tiffany for her picture and received a photo. Respondent requested a meeting with Tiffany, asking that she keep the meeting a secret from her mother. Once a meeting was scheduled, respondent was arrested upon arrival at the agreed-upon location and making contact with the person he believed to be Tiffany. He pled guilty to attempted sexual assault on a child in violation of sections 18–2–101 and 18–3–405(1), C.R.S.2010, a class five felony, and he was sentenced to five years of sex offender intensive supervision probation, scheduled for completion in September 2011. Respondent did not notify the Commission of his conviction until approximately eight months after he entered his guilty plea, despite applying for a renewal of his broker's license during the interim.

The Commission filed a notice of charges alleging that respondent was subject to discipline under section 12–61–113(1)(m), C.R.S. 2010, based on his conviction, and under section 12–61–113(1)(m.6), C.R.S.2010, based on his failure to immediately report the conviction to the Commission. After a hearing, the ALJ issued an initial decision, finding that respondent had violated both sections and recommending revocation of his license. After extensive briefing and oral arguments by the parties, the Commission accepted the initial decision and issued a final agency order revoking respondent's real estate broker's license.

## II. Analysis

### A. Jurisdiction

Respondent does not dispute that he was convicted of attempted sexual assault of a minor or that he failed to immediately report that conviction. Rather, he contends that because he was convicted of an attempt, and not the completed crime, the Commission lacked subject matter jurisdiction to revoke his license.

The Commission may "permanently revoke a license when the licensee has performed, is performing, *or is attempting to perform* ... and is guilty of" any of numerous categories of conduct. § 12–61–113(1), C.R.S.2010 (emphasis added). One such category consists of convictions of enumerated crimes, including sexual assault on a child under section 18–3–405, C.R.S.2010, or "any other like crime under Colorado law." § 12–61–113(1)(m).

Defendant argues that section 12–61–113(1)(m) empowers the Commission to impose sanctions for convictions only under the statutes enumerated and that section 18–2–101, prohibiting attempts, is not on the list. He also argues that because attempts are not listed, he had no duty to report pursuant to section 12–61–113(1) (m.6). The ALJ denied respondent's motion to dismiss based on this theory, and the Commission accepted that ruling in its order.

Respondent's jurisdictional challenge requires construction of section 12–61–113(1)(m). We review the construction of a statute de novo. *People v. Null,* 233 P.3d 670, 679 (Colo.2010).

To determine the meaning of a statute, we must ascertain and give effect to the intent of the General Assembly. *People v. Hernandez,* 250 P.3d 568, 570–71 (Colo.2011); *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010). We look first at the language of the statute and give statutory words and phrases their plain and ordinary meaning. *People v. Blue,* 253 P.3d 1273, 1276–77 (Colo.App.2011); *People v. Davis,* 218 P.3d 718, 723 (Colo.App.2008).

This requires that we give effect to every part of the statute and avoid constructions that would render a part of the statute meaningless. *Mayo v. People*, 181 P.3d 1207, 1210 (Colo.App.2008); *see also* § 2–4–201(1)(b), C.R.S.2010; *Gerganoff*, 241 P.3d at 935 ("The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme.").

█ The plain language of section 12–61–113(1)(m), which includes the ability to revoke a license when a licensee "is attempting to perform" one of the enumerated acts, indicates that the legislature intended to give the Commission the authority to impose sanctions, including license revocations, for attempt convictions. To conclude otherwise would render the words "attempting to perform" meaningless. Moreover, respondent's attempt conviction was sufficiently similar to a conviction for sexual assault on a child under section 18–3–405 to be considered a "like crime." Colorado's attempt statute provides in relevant part:

> A person commits criminal attempt if, *acting with the kind of culpability otherwise required for commission of an offense,* he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct ... which is *strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.* Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be ....

§ 18–2–101(1), C.R.S.2010 (emphasis added).

As found by the ALJ, respondent intended to commit sexual assault on a thirteen-year-old child by contacting Tiffany on the Internet, grooming her over a period of several months for sexual contact, taking the initiative to meet her in secret, telling her he would bring condoms and alcohol, and traveling to the meeting place in a vehicle containing marijuana and equipped with a makeshift bed. He was prevented from completing the crime because Tiffany did not in fact exist. Clearly, such an attempt is a "like crime" to an actual sexual assault on a child. Respon-

dent's attempt conviction raises the same concerns regarding public safety and protection as would a conviction for the underlying crime. Accordingly, the Commission had subject matter jurisdiction to consider the revocation of respondent's license based upon his attempt conviction and his admitted failure to immediately report that violation.

### B. Rehabilitation Evidence

Respondent next contends that the Commission (1) was required to consider evidence concerning his rehabilitation; (2) had the burden to prove the absence of rehabilitation; and (3) failed to meet that burden. The Commission agrees that it was required to consider rehabilitation evidence, but disputes that it bears the burden of proof on that issue. We conclude that the Commission bears the burden of proof and met it in this case.

#### 1. Standard of Review

As noted above, statutory construction is a question of law that we review de novo. *Null*, 233 P.3d at 679.

█ Unless otherwise provided by statute, the proponent of an order bears the burden of proof. § 24–4–105(7), C.R.S.2010. We will uphold an agency's decision unless it is arbitrary or capricious, unsupported by substantial evidence, or contrary to law. *Johnson v. Griffin*, 240 P.3d 404, 406 (Colo. App.2009); *Alliance for Colorado's Families v. Gilbert*, 172 P.3d 964, 968 (Colo.App.2007); *Rigmaiden v. Colo. Dep't of Health Care Policy & Financing*, 155 P.3d 498, 501 (Colo. App.2006) (reviewing court may set aside an agency decision if unsupported by substantial evidence in the record). We review the record in the light most favorable to the agency. *Johnson*, 240 P.3d at 406; *Alliance for Colorado's Families*, 172 P.3d at 968.

█ Whether the record contains substantial evidence to support the agency's decision is a question of law. *Am. Nat'l General Ins. Co. v. Rivera*, 217 P.3d 1257, 1259 (Colo.App.2007); *Rigmaiden*, 155 P.3d at 501. We must defer to the agency's determination of the credibility of witnesses and the weight to be given their testimony. *Charnes*

*v. Lobato,* 743 P.2d 27, 32 (Colo.1987); *Colo. Ethics Watch v. City & Cnty. of Broomfield,* 203 P.3d 623, 626 (Colo.App.2009); *Feeney v. Colo. Ltd. Gaming Control Comm'n,* 890 P.2d 173, 179 (Colo.App.1994). We cannot reweigh the evidence or substitute our judgment for that of the agency. *Colo. Ethics Watch,* 203 P.3d at 626; *Kruse v. Town of Castle Rock,* 192 P.3d 591, 601 (Colo.App. 2008).

### 2. The Law

We agree that the Commission was required to consider rehabilitation evidence. In reaching this conclusion, we apply the principles of statutory construction discussed above.

Section 24–5–101(1)(a), C.R.S.2010, provides in pertinent part that "the fact that a person has been convicted of a felony ... shall not, in and of itself, prevent the person ... from applying for and receiving a license ... required by the laws of this state to follow any business, occupation, or profession." Subsection (2) of the same section includes the following statement of legislative intent:

> The intent of this section is to expand employment opportunities for persons who, notwithstanding that fact of conviction of an offense, *have been rehabilitated and are ready to accept the responsibilities of a law-abiding and productive member of society.*

§ 24–5–101(2), C.R.S.2010 (emphasis added). While this statute by its terms applies only to applications for licenses, section 12–61–114(6), C.R.S.2010, requires that the Commission be governed by its provisions in any hearing in which there is a possibility of the revocation of a license because of a felony conviction.

■ Consequently, reading the plain language of the statutes and harmonizing their respective provisions, *see Gerganoff,* 241 P.3d at 935; *Mullins v. Kessler,* 83 P.3d 1203, 1205 (Colo.App.2003), we conclude that the statutory scheme does not authorize the Commission to revoke the license of a licensee based solely on his or her conviction of a felony. The statutory scheme therefore requires consideration of other factors, includ-

ing specifically the extent to which the licensee has been rehabilitated and "is ready to accept the responsibilities of a law-abiding and productive member of society." § 24–5–101(2).

■ We also conclude that the statutory scheme necessarily imposes a burden of proof on the Commission beyond merely establishing the existence of a respondent's felony conviction. Section 24–4–105(7) requires that the proponent of an order bear the burden of proof. *See also Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1338 (Colo.1997) (agency, as proponent of revocation order, had the burden of proof); *People in Interest of Heckers v. Dist. Court,* 170 Colo. 533, 538, 463 P.2d 310, 312 (1970) (burden is on proponent of order suspending or revoking liquor license to prove sufficient grounds). Sections 12–61–114(6) and 24–5–101 make clear that respondent's felony conviction standing alone is not sufficient to support a license revocation. Therefore, the Commission bears the burden of proving the additional matters necessary to support the revocation order, namely that respondent has not been rehabilitated. The ALJ's initial decision, accepted by the Commission, recognizes that the Commission bears the burden of proof.

### 3. Application

■ In determining whether the Commission sufficiently considered evidence of respondent's rehabilitation, we begin with the presumption that the Commission properly discharged its duties. *See State Bd. of Chiropractic Exam'rs v. Stjernholm,* 935 P.2d 959, 972 (Colo.1997); *Hadley v. Moffat Cnty. Sch. Dist. RE–1,* 681 P.2d 938, 944 (Colo.1984); *Eliopulos v. Colo. State Pers. Bd.,* 705 P.2d 1035, 1037–38 (Colo.App.1985). We therefore accord to the Commission the same presumption given trial courts, namely, that it considered the evidence before it. *See Howard v. Lester,* 153 Colo. 199, 201, 385 P.2d 121, 122 (1963) ("The judgment entered by the trial court is presumed to have been entered after due consideration of all the evidence admitted upon the trial."); *In re Marriage of Hatton,* 160 P.3d 326, 329–30

(Colo.App.2007); *see also Young v. Dep't of Fish & Game,* 124 Cal.App.3d 257, 177 Cal. Rptr. 247, 261 (1981) (" '[I]t is presumed, in the absence of evidence establishing ... the contrary, that ... the agency duly considered the evidence adduced at the administrative hearing ....' ") (quoting *Faulkner v. Cal. Toll Bridge Auth.,* 40 Cal.2d 317, 253 P.2d 659, 667 (1953)); *Cent. Platte Natural Res. Dist. v. Wyoming,* 245 Neb. 439, 513 N.W.2d 847, 861–62 (1994) (stating that "[u]nless there is affirmative evidence to the contrary, we will presume that an agency has duly considered all the evidence before it" and citing other cases).

■ Here, we need not rely solely on presumptions. Although the initial decision does not use the word "rehabilitation," the ALJ discussed at some length in his initial decision the evidence of rehabilitation presented to him and made detailed factual findings in that regard. *See Mohawk Data Sciences Corp. v. Indus. Comm'n,* 671 P.2d 1335, 1338 (Colo.App.1983) (the agency "is not held to a 'crystalline standard' in articulating its findings"); *see also In re Woloson,* 796 P.2d 1, 2 (Colo.App.1989). Specifically, the ALJ found, among other things, that respondent had (1) substantially complied during the first three years of his sentence[1] with all terms of his probation; (2) worked hard in his sex offender therapy and progressed well, though he had not completed the therapy; (3) taken responsibility for his behavior and shown accountability for his actions; (4) overcome his substance abuse problem; (5) maintained a good support system and motivation to resume a healthy relationship with his wife and children; (6) learned tools and skills to avoid high risk situations; and (7) not engaged in any further criminal behavior since his arrest.

However, the ALJ also noted the extreme circumstances of respondent's crime. He found that respondent engaged in extensive planning and took steps to avoid detection by requesting that Tiffany keep their contact a secret from her mother. Respondent intended to manipulate and take advantage of a vulnerable victim by "groom[ing]" her for sexual contact. In addition, respondent disclosed to his therapist that he had previously engaged in inappropriate Internet chat with four other female minors.

The ALJ considered evidence casting serious doubts on respondent's integrity based on his failure to immediately report his conviction, his lack of candor in explaining the delay, and his evasiveness under oath at the hearing. This evidence included respondent's own testimony during the Commission's case minimizing his criminal conduct and denying or professing a lack of memory regarding significant aspects of that conduct.

The ALJ also found that the guiding principles of sex offender management suggest that (1) sex offenders generally cannot be cured; (2) successful treatment cannot permanently eliminate the risk that a sex offender will repeat his or her offense; (3) it is difficult to predict the likelihood of re-offense or future victim selection; (4) community safety is paramount in sex offender management; and (5) sex offenders tend to exhibit secretive and deceptive behaviors. Respondent's psychologist testified that respondent would probably remain in therapy at least throughout the term of his uncompleted sentence.

The ALJ found that respondent's freedoms remained relatively restricted based on his probation conditions. These restrictions included (1) a prohibition on his having contact with children under eighteen years of age, including a bar on his contacting his own daughter unless the visit was approved and his wife, a trained "informed supervisor," was present; (2) intensive sexual offender treat-

---

1. At the time of the hearing, two years remained on respondent's five-year probation sentence, which he has not yet completed. In *Zamarripa,* on which respondent heavily relies, the supreme court suggests that section 24–5–101 does not apply until the convicted felon completes his or her sentence:

> Section 24–5–101 embodies the generally applicable policy of the state of Colorado that

convicted felons *who have served their sentences* and are rehabilitated may be granted business and occupational licenses.

929 P.2d at 1339 (emphasis added). At a minimum, whether a licensee has completed his or her sentence is relevant to whether the licensee has been rehabilitated.

ment and group therapy sessions once a week, as well as semimonthly therapy sessions with his individual therapist; (3) the creation of weekly schedules recording his planned movements for the following week; (4) a mandatory curfew; (5) polygraphs and chemical testing upon request; and (6) severe limits on his use of the Internet. At the time of the hearing, he was still subject to all of these restrictions and conditions.

Based on his review of all of the evidence, the ALJ concluded that notwithstanding respondent's progress in probation,

> the planning involved in his offense, his intent to take advantage of a vulnerable victim, the delayed disclosure of his conviction to the Commission, and the mendacity shown in explaining that delay, all indicate a character inconsistent with licensure in a profession that demands scrupulous honesty, strict compliance with the law, and integrity in dealing with others.

The Commission accepted this conclusion, as well as all of the other findings and conclusions in the initial decision.

We conclude that substantial evidence supports the Commission's conclusion, and we decline respondent's invitation to reweigh the evidence or to substitute our judgment for that of the agency.

### C. Appropriate Sanction

Respondent nonetheless contends that the Commission's sanction of revocation was arbitrary and capricious. We disagree.

■ Courts will uphold an agency sanction unless it (1) bears no relation to the proscribed conduct, (2) is manifestly excessive in relation to the needs of the public, or (3) is otherwise a gross abuse of discretion. *Colo. Real Estate Comm'n v. Hanegan,* 947 P.2d 933, 936 (Colo.1997); *see also Eddie's Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm'n,* 218 P.3d 326, 335 (Colo. 2009); *Colo. Bd. of Med. Exam'rs v. Robertson,* 751 P.2d 648, 650 (Colo.App.1987) (the Colorado Board of Medical Examiners "may impose any sanction which is not arbitrary and capricious or a gross abuse of discretion"). We may not substitute our judgment for that of the Commission as to what is a reasonable penalty. *See Sherritt v. Rocky Mountain Fire Dist.,* 205 P.3d 544, 547 (Colo.App.2009); *Minh Le v. Colo. Dep't of Revenue,* 198 P.3d 1247, 1252 (Colo.App. 2008); *Robertson,* 751 P.2d at 650; *Petersen v. Colo. Racing Comm'n,* 677 P.2d 412, 414 (Colo.App.1983). To set aside an agency's determination as arbitrary or capricious, the reviewing court must be convinced, based on the record as a whole, that there is no substantial evidence supporting that determination. *Colo. Ethics Watch,* 203 P.3d at 626 (citing § 24–4–106(7), C.R.S.2010). Where the evidence supports the Commission's imposition of a sanction against a licensed broker, we must uphold it absent an abuse of discretion. *See Hanegan,* 947 P.2d at 937.

■ As discussed above, the statutory scheme clearly gives the Commission the discretion to revoke a real estate broker's license upon a violation of either section 12–61–113(1)(m) or section 12–61–113(1)(m.6) where the licensee has not completed his or her rehabilitation. Here, the record supports the Commission's findings and conclusions that respondent violated both sections and that at the time of the hearing, despite progress with his rehabilitation, his character remained inconsistent with the requirements of licensure.

We reject respondent's argument that the sanction of revocation is arbitrary and capricious because it cannot be harmonized with other sanctions issued by the Commission to other licensees in similar circumstances. The Commission is not required to impose the same disciplinary sanction in all comparable cases. *See State Bd. of Med. Exam'rs v. McCroskey,* 880 P.2d 1188, 1195 (Colo.1994) (holding that the Board of Medical Examiners has discretion under the Medical Practice Act to define the grounds for medical discipline on a case-by-case basis); *Thompson v. Bd. of Educ. of Roaring Fork Sch. Dist. RE-1,* 668 P.2d 954, 956 (Colo.App.1983) ("The board of education ... has the case-by-case authority to define the limits of broad, general grounds for dismissal."); *see also FCC v. WOKO, Inc.,* 329 U.S. 223, 228, 67 S.Ct. 213, 91 L.Ed. 204 (1946) ("[W]e cannot say that the Commission is bound ... to deal with all cases at all times as it has dealt with some

that seem comparable."). Moreover, the ALJ found that the Commission had revoked the license of at least one other licensee who was convicted of felony sexual assault and then failed to notify the Commission.

We therefore conclude that the revocation is related to the conduct for which respondent was sanctioned, is not manifestly excessive in relation to the needs of the public, and is not otherwise a gross abuse of discretion.

The order is affirmed.

Judge TAUBMAN and Judge TERRY concur.