Colorado Court of Appeals Opinions || September 24, 2015


Colorado Court of Appeals -- September 24, 2015
2015 COA 137. No. 14CA1861. In re the Disciplinary Action Against the Real Estate BrokerÃ¢ÂÂs License of McDonnell v. Colorado Real Estate Commission.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 137

 
 



 Court of Appeals No. 14CA1861
 Colorado Real Estate Commission No. RC 2013-0011


 In re the Disciplinary Action Against the Real Estate Brokerâs License of Bernard McDonnell, License No. EA40019308,

 Respondent-Appellant,

 v.

 The Colorado Real Estate Commission,

 Petitioner-Appellee.


 ORDER AFFIRMED IN PART
 AND REVERSED IN PART

 Division III
 Opinion by JUDGE FOX
 Dailey and Lichtenstein, JJ., concur

 Announced September 24, 2015


 Susemihl, McDermott, & Cowan, P.C., Jason W. Downie, Colorado Springs, Colorado, for Respondent-Appellant

 Cynthia Coffman, Attorney General, Lisa Brenner Freimann, First Assistant Attorney General, Joel W. Kiesey, Assistant Attorney General, Nicholas J. Lopez, Fellow, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

 
 Â 

 Â¶1Â Â Â Â Â Â Â  Bernard McDonnell, a licensed real estate broker, appeals a final agency order of the Colorado Real Estate Commission (Commission) disciplining him for taking funds from the Pinecliff Homeowners Association (HOA)[1], located in Colorado Springs, without permission and for his personal use. We affirm the final order as to Counts 1, 2, and 4. We reverse regarding Count 3 and affirm the Commissionâs sanctions.

 I. Background

 Â¶2Â Â Â Â Â Â Â  In 2010 and 2011, while serving as the president of the HOA, McDonnell wrote four checks totaling $10,000 on the HOAâs account payable to himself or to his business, Rocky Mountain Batting Cages (RMBC). As president, McDonnell had authority to sign HOA checks, but he also had a fiduciary duty to ensure that all expenses were approved through the proper administrative channels and that HOA funds were spent only on HOA business. The HOAâs financial practice was for the HOAâs treasurer to prepareÂ a voucher for each expense, identifying the payee and the purpose of the expenditure. The HOA board would then review the vouchers and at least two board members would sign their approval. No vouchers were prepared or board membersâ signatures gathered for the $10,000 in checks at issue here. And McDonnell used the check proceeds to pay RMBCâs operating expenses, not for the HOAâs benefit.

 Â¶3Â Â Â Â Â Â Â  When the HOAâs treasurer, Pam Dees, discovered one of these checks â a $2000 check payable to RMBC â McDonnell claimed that he had written the check on the HOA account by mistake and promised to repay the HOA in full, which he did shortly thereafter. When Deesâs term as treasurer ended, McDonnell took custody of the HOAâs accounting records and did not appoint a new or interim treasurer. Shortly thereafter, Deby Williams, a Pinecliff resident, contacted McDonnell and volunteered to assume the duties of treasurer. McDonnell took no action to call a board meeting to consider Williamsâs election and, despite multiple requests by Williams, he refused to provide her access to the HOAâs financial records.

 Â¶4Â Â Â Â Â Â Â  The following year, one HOA board member circulated an e-mail requesting that the board meet to discuss, in part, the âannual financial/treasurerâs report.â McDonnell declined to attend the meeting and informed the board that he was resigning. He then deposited the remaining $8000 that he had withdrawn for non-HOA purposes into the HOA bank account.

 Â¶5Â Â Â Â Â Â Â  Shortly thereafter, the HOA board discovered the checks that McDonnell had written and reported him to the police department and the Commission. No criminal charges were filed, but the Commission opened an investigation.

 Â¶6Â Â Â Â Â Â Â  The Commission charged McDonnell with four violations of the Colorado Real Estate Broker License Law:

 Count 1: Failing to account for or to remit moneys belonging to others within a reasonable time pursuant to section 12-61-113(1)(g), C.R.S. 2015.

 Count 2: Converting, diverting, or commingling the funds of others with oneâs own funds pursuant to section 12Â­61-113(1)(g.5).

 Count 3: Demonstrating unworthiness or incompetency to act as a real estate broker pursuant to section 12Â­61-113(1)(n).

 Count 4: Engaging in dishonest dealing pursuant to section 12-61-113(1)(t).

 Â¶7Â Â Â Â Â Â Â  McDonnell objected to the Commissionâs jurisdiction to sanction him for conduct that did not involve a real estate matter and denied that he was subject to discipline under any of the four counts.

 Â¶8Â Â Â Â Â Â Â  An administrative law judge (AUJ) held an evidentiary hearing and concluded that, in general, the Commissionâs sanction authority extended to certain conduct outside the context of real estate. Whether McDonnellâs conduct warranted sanctions under the specific counts charged, however, would depend on the scope of each statutory provision. Accordingly, the AUJ addressed each provision and determined as follows:

 Count 1: Section 12-61-113(1)(g) is limited to situations where a licensee fails to account for or remit money in connection with some type of real estateÂ transaction. McDonnellâs actions do not, therefore, fall within the scope of this section.

 Count 2: âNothing in the language of [section] 12-61Â­113(1)(g.5) suggests that, to constitute grounds for discipline, an act of conversion must relate to a real estate transaction[,]â and McDonnellâs actions amount to conversion in violation this section.

 Count 3: Section 12-61-113(1)(n) applies to situations where a licensee demonstrates unworthiness or incompetency in âconducting businessâ in the context of real estate. McDonnell was not conducting business and his actions do not, therefore, fall within the scope of this section.

 Count 4: â[N]othing in the language of [section] 12-61Â­113(1)(t) limits its reach to the context of real estate transactions[,]â and McDonnellâs actions amount to dishonest dealing in violation of this section.

 Â¶9Â Â Â Â Â Â Â  Both parties filed exceptions to the ALJâs decision with the Commission. The Commission affirmed that McDonnell hadÂ violated section 12-61-113(1)(g.5) (Count 2) and section 12-61Â­113(1)(t) (Count 4) and agreed with the ALJâs reasoning on both counts. However, the Commission reversed the ALJâs conclusions as to Counts 1 and 3 and instead concluded:

 Count 1: Section 12-61-113(1)(g) (Count 1) permits disciplining a licensee whether âacting as a real estate broker[s] or otherwise[,]â and McDonnellâs conduct of failing to account for or remit money belonging to others violates this section.

 Count 3: The statutory phrase âconducting businessâ in section 12-61-113(1)(n) includes businesses that are not based in real estate, and McDonnellâs conduct of demonstrating unworthiness and incompetency in his business dealings with the HOA and RMBC violates this section.

 Â¶10Â Â Â Â Â Â Â  McDonnell now appeals the Commissionâs order, again contending that the Commission lacked the authority to sanction him under any of the four statutory provisions charged because hisÂ conduct did not concern real estate matters. We agree in part and disagree in part.

 II. Standard of Review

 Â¶11Â Â Â Â Â Â Â  The standard of review for Commission actions is governed by statute. Colo. Real Estate Commân v. Hanegan, 947 P.2d 933, 935 (Colo. 1997). We âmay not overturn agency actions unless such actions are arbitrary, capricious, legally impermissible, or an abuse of discretion.â Id. (summarizing section 24-4-106(7), C.R.S. 2015).

 Â¶12Â Â Â Â Â Â Â  McDonnellâs jurisdictional challenges require statutory construction, which we conduct de novo. Colo. Real Estate Commân v. Bartlett, 272 P.3d 1099, 1101 (Colo. App. 2011). When interpreting a statute, we ascertain and give effect to the intent of the General Assembly, looking first to the statuteâs plain language and according words and phrases their ordinary meanings. Specialty Rests. Corp. v. Nelson, 231 P.3d 393, 397 (Colo. 2010); Colo. Citizens for Ethics in Govât v. Comm. for Am. Dream, 187 P.3d 1207, 1220 (Colo. App. 2008). We give effect to every part of the statute and avoid constructions that would render a word, phrase, or provision meaningless. Bartlett, 272 P.3d at 1102.

 Â¶13Â Â Â Â Â Â Â  If the plain language is ambiguous, we employ rules of statutory interpretation to resolve the ambiguity. Anderson v. Longmont Toyota, Inc., 102 P.3d 323, 327 (Colo. 2004). We read applicable statutory provisions as a whole to accord consistent, harmonious, and sensible effect to all parts. Id. In harmonizing seemingly conflicting statutes, we consider the consequences of a given construction and the ultimate goal of the statutory scheme. Id. We presume the General Assembly intended just and reasonable results, Â§ 2-4-201(1)(c)-(d), C.R.S. 2015, and we avoid statutory interpretations leading to absurd outcomes, Anderson, 102 P.3d at 327; State v. Nieto, 993 P.2d 493, 501 (Colo. 2000).

 Â¶14Â Â Â Â Â Â Â  Finally, we give considerable weight to an agencyâs reasonable interpretation of its own enabling statute, but we are not bound by its legal interpretations. Specialty Rests. Corp., 231 P.3d at 397; Anderson, 102 P.3d at 327.

 III. Jurisdiction

 Â¶15Â Â Â Â Â Â Â  We first address and reject McDonnellâs contention that the Commission does not have the authority to sanction him forÂ conduct that does not involve âselling, exchanging, buying, renting, or leasingâ real estate. See Â§ 12-61-101(2)(a), C.R.S. 2015.

 Â¶16Â Â Â Â Â Â Â  To ensure that licensed brokers remain âcompeten[t] to transact the business of a real estate broker in such manner as to safeguard the interest of the public,â Â§ 12-61-102, C.R.S. 2015; see In re Currin, 55 B.R. 928, 933 (Bankr. D. Colo. 1985), the Commission has the authority to âtake disciplinary action against [them],â Albright v. McDermond, 14 P.3d 318, 322 (Colo. 2000); see also Â§ 12-61-113(1). Specifically, the Commission can sanction a licensed broker for any of the grounds identified in section 12-61Â­113(1). Contrary to McDonnellâs assertion, some of the grounds identified, by their very terms, do not involve âselling, exchanging, buying, renting, or leasingâ real estate, and many others do not involve conduct specific to brokers:

 
 âKnowingly making any misrepresentation.â Â§ 12-61Â­113(1)(a).

 
 â[V]iolating any reasonable rule or regulation promulgated by the [C]ommission in the interests of the public.â Â§ 12Â­61-113(1)(k).

 
 Â âConviction of, entering a plea of guilty to, or entering a plea of nolo contendere toâ various crimes under the Colorado Criminal Code, federal law, or the laws of other states. Â§ 12-61-113(1)(m).

 
 âFailing to immediately notify the [C]ommission in writing of a conviction, plea, or violation pursuant to paragraph (m).â Â§ 12-61-113(1)(m.6).

 
 â[H]aving a license, registration, or certification issued by Colorado or another state revoked or suspended for fraud, deceit, material misrepresentation, theft, or the breach of a fiduciary duty,â including, but not limited to, a law license or an investment advisor certificate. Â§ 12-61-113(1)(y).



 Â¶17Â Â Â Â Â Â Â  The inclusion of these provisions demonstrates that the legislature intended the Commissionâs sanction authority to extend to a brokerâs improper conduct outside the real estate context, particularly when it speaks to the brokerâs honesty, dignity, or moral character. See Bartlett, 272 P.3d at 1135 1105 (allowing the Commission to sanction a broker for hiding his sexual assault conviction from oversight because such conduct âindicate[s] a character inconsistent with licensure in a profession that demands scrupulous honesty, strict compliance with the law, and integrity in dealing with othersâ). Moreover, during a 1975 legislative hearing on proposed amendments to the sanctioning provisions of the Real Estate Broker License Law, House Representative Jack McCroskey acknowledged that the Commission had the authority to punish real estate brokers for conduct outside the real estate context. See Hearing on H.B. 1402 before the H. Judiciary Comm., 50th Gen. Assemb., 1st Reg. Sess. (Mar. 14, 1975) (statement of Rep. Jack McCroskey). He specifically stated, â[Colorado] courts have already held that if you steal some money even though you arenât acting as a real estate broker, you still could have your license revoked.â Id.

 Â¶18Â Â Â Â Â Â Â  Nonetheless, McDonnell contends that in Hart v. Colorado Real Estate Commission, 702 P.2d 763 (Colo. App. 1985), another division of this court expressly limited the Commissionâs review of a brokerâs conduct to matters involving the âselling, exchanging, buying, renting, or leasing of real estateâ when it stated, â[t]he Commission is empowered to review actions concerning the âselling, exchanging, buying, renting, or leasing of real estate.ââ Id. at 765 (quoting Â§ 12-61-101(2)(a)).

 Â¶19Â Â Â Â Â Â Â  This statement does not limit the Commissionâs review to only those enumerated actions. In Hart, the Commission sanctioned a real estate broker for making âsubstantial and willful misrepresentationsâ and for engaging in âdishonest dealingâ in the context of negotiating a bridge loan. Id. (internal quotation marks omitted). The broker argued that the Commission exceeded its sanction authority because the bridge loan transaction did not require broker licensure. Id. The Hart division disagreed, reading the Commissionâs sanction authority expansively to include the power to regulate âselling, exchanging, buying, renting, or leasingâ real estate, along with the power to discipline brokers âfor related [real estate] activities which do not require a license.â Id. (internal quotation marks omitted). Nothing in the Hart opinion suggests that the Commission could not also sanction a real estate broker for dishonesty or willful misrepresentations outside the context of real estate, nor were those specific facts before the division. To conclude otherwise would contradict the Commissionâs broad,Â statutorily-granted sanction authority outlined in section 12-61Â­113(1). See, e.g., Â§Â§ 12-61-113(1)(a), (m), (m.6), and (y).

 Â¶20Â Â Â Â Â Â Â  McDonnell further objects to an expansive reading of the Commissionâs sanction authority because, he argues, it would be âpreposterousâ for âthe Commission to have jurisdiction over licensees in all aspects of their endeavors unrelated to real estate and their personal lives.â We disagree. Broad sanction authority is not uncommon in the context of professional licensure. See, e.g., Colo. RPC 8.4 (âIt is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . (h) engage in any conduct that directly, intentionally, and wrongfully harms others and that adversely reflects on a lawyerâs fitness to practice law.â) (emphasis added); Â§Â§ 12-36-117(1)(i) to -118(9)(a), C.R.S. 2015 (allowing the Colorado Medical Board to discipline physicians for the â(i) [h]abitual or excessive use or abuse of alcohol, a habit-forming drug, or a controlled substanceâ); see also Colo. State Bd. of Med. Examârs v. McCroskey, 940 P.2d 1044, 1048-49 (Colo. App. 1996) (concluding that a physician can be disciplined as unprofessional for improperÂ recordkeeping, although recordkeeping does not constitute the practice of medicine for licensing purposes).

 Â¶21Â Â Â Â Â Â Â  It makes sense for the Commission to have broad powers. âProtection of the public is a primary Commission purpose.â Albright, 14 P.3d at 322. Safeguarding the interests of the public includes ensuring that real estate brokers demonstrate âtruthfulness and honesty and otherwise good moral characterâ to obtain licensure. See Â§ 12-61-102. In addition, real estate brokers, who are regularly entrusted with access to othersâ funds, stand in a fiduciary relationship with their clients and must therefore demonstrate the qualities of good faith, loyalty, and fidelity. See Olsen v. Vail Assocs. Real Estate, Inc., 935 P.2d 975, 978 (Colo. 1997); see also Â§Â§ 12-61-804 to -805, C.R.S. 2015.

 Â¶22Â Â Â Â Â Â Â  Accordingly, we conclude that the Commission had the authority to sanction McDonnell for his conduct, even though that conduct did not involve âselling, exchanging, buying, renting, or leasingâ real estate.

 Â¶23Â Â Â Â Â Â Â  Because McDonnell also contends that the Commission lacked the authority to sanction him under each of the specific provisions charged, we address each in turn.

 IV. Count 1: Section 12-61-113(1)(g)

 Â¶24Â Â Â Â Â Â Â  Section 12-61-113(1)(g) provides that the Commission may discipline a licensee for

 [f]ailing to account for or to remit, within a reasonable time, any moneys coming into the licenseeâs possession that belong to others, whether acting as real estate brokers or otherwise, and failing to keep records relative to said moneys, which records shall contain such information as may be prescribed by the rules of the [C]ommission relative thereto and shall be subject to audit by the [C]ommission.

 Â¶25Â Â Â Â Â Â Â  McDonnell contends that this section applies only to a licenseeâs conduct involving real estate matters. We disagree.

 Â¶26Â Â Â Â Â Â Â  The section plainly grants the Commission the power to sanction a licenseeâs conduct whether he is âacting as [a] real estate broker[] or otherwise.â Â§ 12-61-113(1)(g). That the General Assembly chose to include the phrase âor otherwiseâ indicates its intention to discipline brokers for failing to account or remit othersâ funds, even in non-real estate transactions. See Nieto, 993 P.2d atÂ 500 (â[S]tatute[s] should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said.â). To interpret the statute otherwise â as applying only when a licensee is acting as a broker in the real estate context â would render the phrase âor otherwiseâ superfluous, and we generally reject such interpretations. See People v. Cross, 127 P.3d 71, 73 (Colo. 2006) (We âreject interpretations that render words or phrases superfluous[.]â); see also Bartlett, 272 P.3d at 1102 (inclusion of the phrase âattempting to performâ indicated that the legislature intended to give the Commission the authority to sanction a licensee based on the attempted, rather than actual, performance of a prohibited act because â[t]o conclude otherwise would render the words âattempting to performâ meaninglessâ).

 Â¶27Â Â Â Â Â Â Â  Had the General Assembly wanted to limit sanctions under section 12-61-113(1)(g) to real estate matters, it could have done so. See Springer v. City & Cnty. of Denver, 13 P.3d 794, 804 (Colo. 2000) (âWhere the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additionalÂ restrictions into the statute.â). For example, section 12-61-113(1)(j) expressly limits sanctions to instances where a licensee is âperforming any of the functions of a real estate broker.â Section 12-61-113(q) is similarly limited to instances where a broker claims an undisclosed amount of compensation or profit âin connection with any acts for which a [real estate] license is required.â See Anderson, 102 P.3d at 327 (we read applicable statutory provisions as a whole).

 Â¶28Â Â Â Â Â Â Â  McDonnell nonetheless contends that the recordkeeping requirements contained in section 12-61-113(1)(g) indicate that the section applies only to conduct related to real estate matters. We disagree that these requirements so limit the reach of the statute. The statute states that records of transactions involving othersâ money âshall contain such information as may be prescribed by the rules of the [C]ommission relative thereto and shall be subject to audit by the [C]ommission.â Â§ 12-61-113(1)(g) (emphasis added). This language plainly requires a licensee, whether acting as a real estate broker or otherwise, to keep records according to the Commissionâs rules that are relevant to the conduct at issue.

 Â¶29Â Â Â Â Â Â Â  McDonnell cites only the Commissionâs rules that are applicable when he is acting as a real estate broker, not rules that apply when he acts âotherwise.â The Commissionâs rules and regulations do not address the specific recordkeeping requirements that would apply when a licensee acts âotherwise.â It would be impossible to have specific rules for all conceivable actions involving records. See, e.g., Â§ 7-136-101(2), (5)(h), C.R.S. 2015 (requiring a nonprofit corporation to âmaintain appropriate accounting records[,]â including all financial statements under section 7-136Â­106, C.R.S. 2015); Â§ 12-2-123(1), C.R.S. 2015 (detailing grounds for sanctioning a certified public accountant, such as âfailure to retain records of the work performed for each clientâ). But, the fact that there are no separate administrative rules detailing the precise recordkeeping requirements does not mean that such conduct is beyond the Commissionâs regulation. See Depât of Regulatory Agencies Reg. 725, 4 Code Colo. Regs. 725-1:E-3 (defining the Commissionâs audit authority broadly as permitting the Commission to require a licensee to âproduce for inspection . . . any document or record as may be reasonably necessary for investigationÂ or audit in the enforcement of Title 12 Article 61â) (emphasis added).

 Â¶30Â Â Â Â Â Â Â  Indeed, section 12-61-113(1)(g) requires that ârecords relative to said moneysâ be kept. And, the AUJ and the Commission found that McDonnell kept no records at all. McDonnel does not dispute this finding, and the record clearly supports it. See Hart, 702 P.2d at 765. Aside from check stubs, nothing in the record indicates that McDonnell prepared any financial vouchers, obtained any HOA board signatures, or kept any other financial records relative to the $10,000 that he took from the HOA. Instead, the record supports the Commissionâs findings, as adopted from the AUJ, that McDonnell purposefully withheld evidence of his withdrawals and personal expenditures from HOA oversight.

 Â¶31Â Â Â Â Â Â Â  We therefore conclude that, under section 12-61-113(1)(g), the Commission had the authority to sanction McDonnellâs non-real estate conduct.

 V. Count 2: Section 12-61-113(1)(g.5)

 Â¶32Â Â Â Â Â Â Â  Section 12-61-113(1)(g.5) provides that the Commission may discipline a licensee for

 [c]onverting funds of others, diverting funds of others without proper authorization, commingling funds of others with the brokerâs own funds, or failing to keep such funds of others in an escrow or a trustee account with some bank or recognized depository in this state, which account may be any type of checking, demand, passbook, or statement account insured by an agency of the United States government, and to so keep records relative to the deposit which contain such information as may be prescribed by the rules and regulations of the [C]ommission relative thereto, which records shall be subject to audit by the [C]ommission.

 Â¶33Â Â Â Â Â Â Â  McDonnell contends that this section is inapplicable to his conduct because (1) it applies only to real estate transactions, as evidenced in part by the broker-specific recordkeeping requirements; and (2) even if the section applied to his conduct, his actions did not rise to the level of conversion because he always intended to return the money. We disagree.

 A. Scope of the Statutory Provision

 Â¶34Â Â Â Â Â Â Â  Reviewing section 12-61-113(1)(g.5) de novo, see Bartlett, 272 P.3d at 1101, we reject McDonnellâs contention that punishment for conversion under this section is limited to real estate matters. Section 12-61-113(1)(g.5) broadly states that the Commission mayÂ sanction a licensee for âconverting funds of others.â Nothing in the section limits discipline to those instances of conversion that occur in the context of real estate.

 Â¶35Â Â Â Â Â Â Â  In addition, the Commissionâs administrative recordkeeping requirements are inapplicable here. The statute only requires keeping such records ârelative to [a] deposit.â Â§ 12-61-113(1)(g.5). When, as here, a licensee is not sanctioned for any conduct ârelative to [a] depositâ but instead for general conversion, the recordkeeping portion of the statute, logically, would not apply. See Nieto, 993 P.2d at 501); see also Â§ 2-4-201(1)(c)-(d).

 Â¶36Â Â Â Â Â Â Â  We therefore conclude that the Commission had the authority to sanction McDonnellâs conduct under section 12-61-113(1)(g.5), even though his actions did not involve a real estate transaction. B. McDonnellâs Conduct

 Â¶37Â Â Â Â Â Â Â  Applying a deferential review standard, see Hanegan, 947 P.2d at 935, we disagree with McDonnell that the Commission erred in finding that he converted HOA funds.

 Â¶38Â Â Â Â Â Â Â  Conversion is âany distinct, unauthorized act of dominion or ownership exercised by one person over personal property belongingÂ to another.â Byron v. York Inv. Co., 133 Colo. 418, 424, 296 P.2d 742, 745 (1956). The Commission, adopting the ALJâs findings, decided that McDonnell took HOA funds without authorization from the HOA, exercised dominion over those funds, and used those funds to pay the operating expenses of his personal business, RMBC. The Commission then concluded that McDonnell converted money in violation of section 12-61-113(1)(g.5) as soon as he withdrew funds from the HOA account without the HOAâs permission. Because there is substantial evidence in the record to support this determination, we cannot conclude that it was arbitrary, capricious, or legally impermissible. See Hanegan, 947 P.2d at 935; see also Bartlett, 272 P.3d at 1105 (âTo set aside an agencyâs determination as arbitrary or capricious, the reviewing court must be convinced, based on the record as a whole, that there is no substantial evidence supporting that determination.â).

 Â¶39Â Â Â Â Â Â Â  McDonnell argues, however, that, pursuant to Glenn Arms Associates v. Century Mortgage & Investment Corp, 680 P.2d 1315, 1317 (Colo. App. 1984), conversion requires proof that the property owner demanded the return of the property and the converterÂ refused. Because the HOA never demanded the money back and because McDonnell later repaid the money in full, he asserts that his conduct did not rise to the level of conversion discussed in Glenn Arms Associates. We disagree and conclude that a demand and refusal were not required here.

 Â¶40Â Â Â Â Â Â Â  In Salida Building & Loan Association v. Davis, 15 Colo. App. 294, 296, 64 P. 1046, 1046 (1901), another division of this court held that â[f]or the purposes of an action for unlawful conversion, demand and refusal are never necessary, except to furnish evidence of the conversion; and when, without these, the circumstances are sufficient to prove the conversion, they are superfluous.â See also Fin. Corp. v. King, 150 Colo. 13, 18, 370 P.2d 432, 435 (1962) (agreeing with the court in Davis v. American National Bank of Denver, 149 Colo. 34, 37, 367 P.2d 325, 326 (1961), that, for the purposes of unlawful conversion, demand and refusal are superfluous when âthe circumstances are sufficient to prove the conversionâ); Carper v. Risdon, 19 Colo. App. 530, 535, 76 P. 744, 746 (1904) (âIf the fact of the conversion otherwise appears, the demand and refusal become immaterial.â).

 Â¶41Â Â Â Â Â Â Â  The circumstances here were sufficient to prove conversion without proof of a demand or refusal. The AUJ and the Commission found that McDonnell withdrew HOA funds without authorization or credible justification, that he purposefully hid the withdrawals from HOA oversight, that he used the funds for non-HOA purposes, and that he repaid the funds only after realizing that his malfeasance would likely be discovered. Because substantial evidence supports these findings, we decline to disturb them on review. See Hart, 702 P.2d at 765; Seibel v. Colo. Real Estate Commân, 34 Colo. App. 415, 419, 530 P.2d 1290, 1292-93 (1974).

 Â¶42Â Â Â Â Â Â Â  Thus, the Commission did not err in concluding that McDonnell converted funds in violation of section 12-61-113(1)(g.5). VI. Count 3: Section 12-61-113(1)(n)

 Â¶43Â Â Â Â Â Â Â  Section 12-61-113(1)(n) provides that the Commission may discipline a licensee for â[h]aving demonstrated unworthiness or incompetency to act as a real estate broker by conducting business in such a manner as to endanger the interest of the public[.]â

 Â¶44Â Â Â Â Â Â Â  McDonnell contends that the Commission erred in punishing him under this section because he was not âconducting businessâÂ in the context of a real estate transaction. The Attorney General disagrees, arguing that McDonnell was conducting HOA and RMBC business and that, pursuant to Eckley v. Colorado Real Estate Commission, 752 P.2d 68, 74 (Colo. 1988), section 12-61-113(1)(n) includes any dishonest, deceitful, or ethically objectionable acts that are antithetical to the real estate profession or to real estate brokers.

 Â¶45Â Â Â Â Â Â Â  We conclude that section 12-61-113(1)(n) does not reach McDonnellâs conduct. The Commissionâs administrative rules and regulations, see Depât of Regulatory Agencies Reg. 725, 4 Code Colo. Regs. 725-1:G-7, list the â[g]rounds for finding unworthiness or incompetenceâ under section 12-61-113(1)(n). Rule G-7 provides:

 Pursuant to 12-61-113(1)(n), C.R.S., a licensee . . . shall be considered unworthy or incompetent in the conduct of their business where:

 (a) The licensee violates Rule G-6.[2]

 (b) With particular respect to media advertising:

 (1) The property is not actually located in the area represented.

 (2) The rental price shown is less than that asked by the owner of the available property.

 (3) The property is non-existent or cannot be verified as currently for rent by the licensee.

 (4) The specifics of the property advertised differ materially from the property as it exists.

 (5) A property is advertised in such a way or under such a heading as to indicate the property is of a different type than it actually is. The word âtypeâ refers to such designations as: single family detached residence, duplex, apartment, condominium, townhouse, or mobile home.

 (c) The licensee fails or refuses to abide by the terms of the contract or receipt between himself and a prospective purchaser.

 (d) The broker fails or refuses to refund money pursuant to the terms of the contract or receipt.

 (e) The broker has failed to keep accurate records as specified in these rules or has failed to retain said records for the prescribed time periods.

 Nothing in this exhaustive list incorporates McDonnellâs actions or any other conduct outside the context of real estate. See id. Thus, his actions did not violate section 12-61-113(1)(n).

 Â¶46Â Â Â Â Â Â Â  The Attorney Generalâs reliance on Eckley, 752 P.2d at 74, does not persuade us otherwise. In Eckley, the CommissionÂ charged a real estate broker with professional misconduct under section 12-61-113(1)(n) based on his actions and omissions in the sale of a tavern â a real estate transaction. That case, therefore, dealt with a brokerâs unworthiness and incompetence in the real estate context. Here, the Commission charged McDonnell for conduct unrelated to real estate, rendering Eckley inapplicable.

 Â¶47Â Â Â Â Â Â Â  We therefore conclude that the Commission did not have the authority to punish McDonnell under section 12-61-113(1)(n) because his charged conduct was unrelated to real estate and did not fall within any of the punishable grounds listed in Rule G-7. We accordingly reverse the Commissionâs order as to Count 3.

 VII. Count 4: Section 12-61-113(1)(t)

 Â¶48Â Â Â Â Â Â Â  Section 12-61-113(1)(t) provides that the Commission may discipline a licensee for â[a]ny other conduct, whether of the same or a different character than specified in this subsection (1), which constitutes dishonest dealing[.]â

 Â¶49Â Â Â Â Â Â Â  McDonnell contends that the Commission erred in punishing him under this section because (1) the statute only contemplates sanctions for dishonest dealing in real estate matters and (2) even ifÂ section 12-61-113(1)(t) reached his conduct, his actions did not rise to the level of dishonest dealing. We disagree.

 A. Scope of the Statutory Provision

 Â¶50Â Â Â Â Â Â Â  Reviewing section 12-61-113(1)(t) de novo, see Bartlett, 272 P.3d at 1101, we reject McDonnellâs contention that punishment under this section is limited to real estate matters. Section 12-61Â­113(1)(t) plainly states that it applies to â[a]ny other conduct,â and we see nothing in the remainder of the section, or in the Commissionâs administrative rules and regulations, limiting its reach. The General Assembly or the Commission could have limited the scope of this section to apply only to real estate dealings, but neither chose to do so. See Springer, 13 P.3d at 804.

 Â¶51Â Â Â Â Â Â Â  Therefore, the Commission had the authority to sanction McDonnellâs conduct under section 12-61-113(1)(t), even though that conduct did not involve a real estate transaction.

 B. McDonnellâs Conduct

 Â¶52Â Â Â Â Â Â Â  Applying a deferential review standard, see Hanegan, 947 P.2d at 935, we disagree with McDonnell that the Commission erred in finding that he engaged in dishonest dealing.

 Â¶53Â Â Â Â Â Â Â  Dishonest dealing is not defined in Colorado statute or case law, or in the Commissionâs administrative rules and regulations. Yet, a court can determine the meaning of an undefined phrase of common usage by ascertaining its usual and ordinary meaning. See Cohen v. State, 197 Colo. 385, 388-89, 593 P.2d 957, 960 (1979); Dillabaugh v. Ellerton, 259 P.3d 550, 552 (Colo. App. 2011). A âdishonest actâ is defined as â[c]onduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude.â Blackâs Law Dictionary 733 (10th ed. 2014); see also Hart, 702 P.2d at 765 (where a broker made âsubstantial and willfulâ financial misrepresentations in arranging a bridge loan, he engaged in âdishonest dealingâ under section 12-61-113(1)(t)); see also Estate of Jordan by Jordan v. Hartford Accident & Indem. Co., 844 P.2d 403, 411 (Wash. 1993) (âAn act is dishonest if it involves a breach of trust or honesty.â); Hogg v. Real Estate Commâr, 129 P.2d 709, 717 (Cal. Ct. App. 1942) (concluding that dishonest dealing involves fraud, deception, betrayal, faithlessness, absence of integrity, or a disposition to cheat, deceive, or defraud).

 Â¶54Â Â Â Â Â Â Â  The AUJ found, and the Commission agreed, that McDonnell had a fiduciary duty to preserve the HOAâs funds and not to convert them for his own use. The Commission also adopted the AUJâs determination that McDonnell misappropriated $10,000 from the HOA for personal use without disclosing or returning the funds until his inappropriate conduct was at risk of being discovered. These findings are supported by substantial record evidence and will not be disturbed on review. See Hart, 702 P.2d at 765. Based on these findings, the Commission concluded that McDonnellâs conduct constituted âdishonest dealingâ in violation of section 12Â­61-113(1)(t). We agree that his misrepresentations and misappropriations demonstrate âbad faith, dishonesty, a lack of integrity, or moral turpitude,â see Blackâs Law Dictionary at 733, and we conclude that the Commissionâs determination was not, therefore, arbitrary, capricious, or legally impermissible, see Hanegan, 947 P.2d at 935; Bartlett, 272 P.3d at 1105.

 Â¶55Â Â Â Â Â Â Â  Accordingly, we conclude that the Commission did not err in determining that McDonnellâs conduct constituted dishonest dealing in violation of section 12-61-113(1)(t).

 VIII. Sanctions

 Â¶56Â Â Â Â Â Â Â  Because we reverse the Commissionâs conclusion as to Count 3, we next address whether the sanctions require revision.

 Â¶57Â Â Â Â Â Â Â  âCourts will uphold an agency sanction unless it (1) bears no relation to the proscribed conduct, (2) is manifestly excessive in relation to the needs of the public, or (3) is otherwise a gross abuse of discretion.â Bartlett, 272 P.3d at 1105. We may not substitute our judgment for that of the Commission as to what constitutes a reasonable penalty. Id.

 Â¶58Â Â Â Â Â Â Â  Upon a violation of any one of the enumerated provisions in section 12-61-113(1), the Commission has the discretion to impose an administrative fine (not to exceed $2500 for each separate offense), to censure the licensee, to place the licensee on probation, or to temporarily suspend or revoke the brokerâs license.

 Â¶59Â Â Â Â Â Â Â  Here, after concluding that McDonnell violated only Counts 2 and 4, the ALJ sanctioned him as follows:

 
 McDonnellâs real estate broker license is placed on probationary status for three years, during which time he may only act in the capacity of a real estate broker in theÂ employ of and under the supervision of another licensed real estate broker;

 
 McDonnell is assessed a civil penalty in the amount of $5000 plus the surcharge authorized by section 24-31Â­108(2), C.R.S. 2015;

 
 McDonnell is publicly censored; and

 
 McDonnell must complete six hours of ethics coursework.



 Â¶60Â Â Â Â Â Â Â  The Commission adopted the ALJâs sanctions in full and without revision, even though it added two additional violations â Counts 1 and 3. Because the Commission changed the violations but left the sanctions untouched, we are not convinced that, on remand, the Commission would alter any sanctions based on a reversal on Count 3. Moreover, the sanctions do not appear excessive, nor do they constitute an abuse of discretion. See Bartlett, 272 P.3d at 1105. We therefore conclude that a remand for reconsideration of the sanctions is unnecessary and thus affirm the original sanctions imposed by the Commission.[3]

 IX. Conclusion

 Â¶61Â Â Â Â Â Â Â  We affirm the Commissionâs conclusions as to Counts 1, 2, and 4. We reverse the Commissionâs conclusion on Count 3, and we affirm the Commissionâs sanctions.

 JUDGE DAILEY and JUDGE LICHTENSTEIN concur.


 [1] During oral arguments, McDonnellâs counsel claimed that this was a voluntary association, not subject to the Colorado Common Interest Ownership Act, Â§Â§ 38-33.3-101 to -402, C.R.S. 2014. The issue was not challenged on appeal or at trial and is not determinative here.

 [2] Rule G-6 concerns a licenseeâs advertising practices and is inapplicable here.

 [3] McDonnell also concedes that he has not preserved an objection to the sanctions on appeal.Â 




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 24, 2015


Back